CASE 34.—ACTION BY J. T. BARNETT'S ADM'R AGAINST
THE PENN MUTUAL LIFE INSURANCE COMPANY.
Original opinion filed November 2, 1906; second
opinion, January 15, 1907.

# Penn's Mutual Life Ins. Co. v. Barnett's Adm'r.

Appeal from Jefferson Circuit Court, Chancery
Branch (Second Division).

SAMUEL B. KIRBY, Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

Insurance—Life Policy—Lapse—Paid-up Insurance.—After payment of twelve annual premiums there was a lapse of a life policy providing that if it lapsed after payment of two annual premiums the company would extend the full amount insured by the policy for such time as the full reserve would carry it, or would grant paid-up insurance, payable at death, for an equitable amount; and if such lapse was after payment of five annual premiums, the paid-up policy should be for as many twentieth-parts of the sum insured as there had been annual premiums paid. Before the lapse insured borrowed money of the insurer on his note, giving the policy as collateral security, the note providing that if it was not paid at maturity the insurer could ascertain the cash value of the policy, and cancel it, and with the cash surrender value pay the loan, and with the balance credit insured with as much paid-up insurance as such balance would purchase at the then age of insured. Held, that on settlement of the policy, which should be at the time of its lapse, insured had the right to a paid-up policy for twelve-twentieths of the original policy, and the insurer had no right to deduct from the amount with which a paid-up policy should be bought, 25 per cent. of the reserve, and enough to continue the original policy till the note was due and interest thereafter to accrue, in addition to the principal of the note and the interest thereon to date.

Penn's Mutual Life Ins. Co. v. Barnett's Adm'r.

## ON REHEARING.

1.  Insurance—Paid-up Policy—Surrender Charge—Carroll's Ky. Stats., 1903, section 659, provides, in relation to life insurance, that in case of default of any premium on a life policy, after three years' premiums have been paid, the policy shall be binding on the company for the amount of paid-up insurance which according to the company's published tables of single premiums, the net value of the policy on such anniversary and the dividends thereon computed by the rule pointed out by the statute · will purchase as a net single premium for insurance maturing and terminating at the time and in the manner provided in the original policy, provided that the reserve of such paid-up insurance shall not be less than two-thirds of the reserve of the original policy. Held, that the statutes do not warrant an insurer charging a surrender charge in issuing paid-up insurance on a defaulted policy; a contention that one-third of the reserve is not to be applied to the purchase of paid-up insurance being untenable.

2.  Usury—Notes.—Where insured in a life policy borrowed money of the insurer on his note, giving the policy as collateral security, and the note provided that, if it was not paid at maturity, the insurer might ascertain the cash value of the policy and cancel it, and with the cash surrender value pay the loan, and with the balance credit insured with as much paid-up insurance as the balance would purchase, the note, in so far as it attempted to allow the insurer to charge a surrender charge in issuing the paid-up insurance, was usurious.

THOS. W. BULLITT and A. SCOTT BULLITT for appellant.

### POINTS AND AUTHORITIES.

1. The stipulation in Barnett's $1,000 note, viz.: that if the note was not paid at maturity the policy should be canceled, the note paid out of the cash surrender value and the balance applied to the purchase of paid-up insurance, never became operative. It is, therefore, wholly immaterial to this controversy whether it is valid or void.

2. The note for $1,000, to secure which Barnett assigned his policy to the Penn Mutual, was an "outstanding liability under the policy," and Barnett was not entitled to exercise the "option" given by the second non-forfeiture clause unless nor until that note should have been "first paid off."

3. By the express terms and within the true intent of the

Penn's Mutual Life Ins. Co. v. Barnett's Adm'r.

second non-forfeiture clause, Barnett was not entitled to exercise the "option" given therein, because he did not "within sixty days" after the lapse of his policy make "written application" therefor and "surrender all claims" thereunder, including any claim for extended insurance under the first non-forfeiture clause.

4. Even if the "sixty days" limit, prescribed in the second non-forfeiture clause of the policy, be construed, not as fixing the time within which an "option" is to be exercised, but as giving a "reasonable time" within which to make the "written application" and "surrender" therein provided for, yet Barnett did not comply with that condition, and thereby lost any supposed right under said clause to demand paid-up insurance payable at death.

5. The "assignment" by Barnett to Penn Mutual of his policy, as collateral security for the payment of his $1,000 note, did not relieve him from the duty of making written application and a surrender of all other claims thereunder, as a "condition precedent" to receiving paid-up insurance, payable at death, for twelve-twentieths of the face of the policy.

6. The Penn Mutual did not "elect" for Barnett to give him paid-up insurance in the sum of $3,000, nor in any manner "waive" its right to insist that, as a "condition precedent" to receiving such insurance, Barnett should first have made "written application" therefor, and have "surrendered" his right to "extended insurance" under the first non-forfeiture clause.

7. A valid agreement was made between the Penn Mutual and Jonathan T. Barnett in September, 1897, whereby, in settlement of all rights under the policy, Barnett accepted a release from his note of $1,000 and received paid-up insurance payable at death for $215.

8. The stipulation in the note for its payment out of the cash surrender value of the policy is not void as usurious or as involving a forfeiture, but the same is valid, being in strict accord with the policy of the statute law of Kentucky.

AUTHORITIES.
(Cited or reviewed.)

Goodman v. Mass. Mutual, etc., 73 N. Y., 480; Worthington v. Charter Oak Ins. Co., 41 Conn., 416; Mutual Benefit Life v. First National Bank, 24 Ky. Law Rep., 580; Mutual Benefit Life v. First National Bank, 115 Ky., 757; Mutual Life of New York v. Jarboe, 102 Ky., 80; Washington Life Ins. Co. v. Miles, 112 Ky., 743; New York Life v. Warren, 25 Ky. Law Rep., 325; Mutual Life of Kentucky v. O'Neil, 25 Ky. Law Rep., 983; 21 Encyc. of Law, 931; Stembridge v. Stembridge, 87 Ky., 91; McGoffin v. Holt,

Penn's Mutual Life Ins. Co. v. Barnett's Adm'r.

1 Duvall, 95; 19 Encyc. of Law, 84; Hexter v. U. S. Life Ins. Co., 91 Ky., 357; Northwestern Mutual v. Barbour, 92 Ky., 427; New York Life v. Curry, 115 Ky., 100; Crutchfield v. Union Central Life, 113 Ky., 53; Ky. Statutes, sec. 659.

JAMES T. A. BAKER and JOHN ROBERTS, attorneys for appellant.

## PROPOSITIONS DISCUSSED.

1. The proposition as to a paid-up policy after five payments, in effect, is a covenant to pay Barnett's estate three thousand dollars upon his death. See: (Montgomery v. Phoenix Mutual Life Insurance Company, 14 Bush, 58.)

This is made clear without the presumption of law against the insurance company, but this court, in case of Sun Life Insurance Company v. Taylor, 22 Law Reporter, page 38, throws the weight of presumption against the company. "Provided" when inserted in a deed, may be either a condition or a covenant. (American & English Encyclopedia, vol. 17, page 298. And a chancellor will not enforce a forfeiture when compensation can be made. St. Louis Mutual Life Insurance Company v. Grigsby, 10 Bush, 307; Montgomery v. Phoenix Life Insurance Company, 14 Bush, 58.)

2. The company in the case at bar, as in these cases, had always in its possession ample security to pay the note for which the policy was pledged.

3. It will be insisted that the note for which the policy was pledged to secure payment did not change the policy. The provisions of the note looking to the ascertainment and application of the policy were absolutely void, because the assignment of the policy made a mortgage which left an equity of redemption in the assignor, of which he could not be deprived, without sale by decree of court or by private sale upon notice. (Hart v. Burton, 7 J. J. Marshall, 322; Honore v. Hutchings, 8 Bush, 690: Curry & Bro. v. New York Life Insurance Company, 24 Ky. Law Rep., 1930; Alexander v. Rodriquez, 12 U. S. Reports.)

4. The stipulation in the policy to pay when so many as five annual premiums are paid the proportion that the payments bear to twenty payments is a contract in writing and is barred by the limitation of fifteen years. Therefore, there is no room for the chancellor to interfere to adjudge what is a reasonable time.

5. It is only when the time provided for is shorter than the provision in the statute of limitations that the chancellor will or can interpose to declare that the stipulated time is unreasonable, and having the power to decide that the time stipulated is too short he has the correlative power to determine what is a

reasonable time, always provided that he cannot repeal or change the statute of limitations.

When the policy in the case at bar lapsed it became a dead policy. (Mutual Life Insurance Company v. Jarboe, 102 Kentucky. 80; Washington Life Insurance Company v. Miles, 23 Ky. Law Rep., 705.)

6. There was nothing left of it except the covenant to pay three thousand dollars. In September, 1897, there existed no policy whose cash value could be ascertained and applied. There was no ratification in the case at bar. Ratification must be upon full information and knowledge. (Owens v. Hull, 9 Peters, 628: Kerr on Frauds and Mistakes, 300.)

"If one dealing with another is misled by him respecting his legal rights, he will have relief in equity."

Same author, page 90. The policy never was cancelled. To cancel a writing is to cross and deface it, to cancel or destroy it by cross marks or other alterations or by burning or tearing the material on which the writing is. (American & English Encyclopedia, 718, 719.)

The case of Mutual Benefit Insurance Company v. First National Bank, 24 Ky. Law Rep., 580, is not applicable to the case at bar.

It was proper in the adjustment of the equities to allow interest to each party.

### AUTHORITIES CITED.

Montgomery v. Phoenix Mut. Life Ins. Co., 14 Bush, 58; Sun Life Ins. Co. v. Taylor, 22 Ky. Law Rep., 38; Am. & Eng. Encyc., vol. 17, 298, 718 and 719; Sa Louis Mut. Life Ins. Co. v. Grigsby, 10 Bush, 307; Hart v. Burton, 7 J. J. Mar., 322; Honore v. Hutchings, 8 Bush, 690; Curry & Bro. v. N. Y. Life Ins. Co., 24 Ky. Law Rep., 1930; Alexander v. Rodriquez, 12 Wallace, ———— U. S. R.; Mut. Life Ins. Co. v. Jarboe, 102 Ky., 80; Washington Life Ins. Co. v. Miles, 23 Ky. Law Rep., 705; Owens v. Hull, 9 Peters, 628; Kerr on Frauds and Mistakes, 300, 90, Mut. Benefit Ins. Co. v. First National Bank, 24 Ky. Law Rep., 580; Outstanding Liability, Webster's Dictionary.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

On the 6th day of April, 1885, the appellant issued a policy of insurance for the sum of $5,000 upon the life of Jonathan T. Barnett; the annual premium due thereon being $189.60. The assured paid the prem-

iums regularly to the number of 12, but failed to pay the thirteenth, when, according to its terms, the policy lapsed.   The policy in question contains, among others, the following provisions: "(11) That if this policy shall become void, all payments previously made upon it shall be forfeited to the company, but if the lapse shall occur by non-payment of premium after two full annual premiums have been paid, the company will, subject to the other conditions of the policy: First, extend, without participation, the full amount insured by this policy for as many years and days as the full reserve, by the actuaries 4 1-2 per cent table of mortality, at the time of such lapse (less any indebtedness upon this policy under the company's rules), will carry the same at the present established rates of the company, but if death shall occur within three years after such lapse by non-payment of premium, and during such extension of insurance, there shall be deducted from the amount payable the sum of all the accrued premiums (less surplus), with interest thereon; or, second, upon written application by the owner of this policy, and the surrender of all claims thereunder to the company at its home office within 60 days after such lapse, will grant non-participating paid-up insurance payable at death, for an equitable amount; but if, at the time of such lapse, five full years' premiums have been paid on this policy, then the paid-up policy shall be for as many twentieth parts of the said sum insured as there shall have been full annual premiums paid thereon; provided all outstanding liability under this policy be first paid off."

On the 26th day of September, 1896, Barnett executed a note to the appellant for $1,000.   He only received $940, the remaining $60 was advanced in the payment of interest on the note for 12 months.   He

assigned his policy as collateral security for the repayment of the sum to the company. The note contained the following provision: "* * * it is agreed that, if said loan be not paid at maturity, the company is hereby authorized, with or without notice to the undersigned, to ascertain (according to its rules for the purchase of policies), the cash value of said policy, to cancel and annul the same, and, with the cash surrender value thereof, pay this loan note and any interest and costs that may be due on the same, and with the balance, if any, purchase and pass to the credit of said policy, on the books of the company, as much paid-up non-participating insurance (payable as the policy is, payable), as the amount will purchase at the then age of the insured; or apply the said balance according to the terms of the policy." The premium due April 6, 1897, was not paid, and by its terms, as said before, the policy lapsed. It is admitted that, at that time, the reserve fund on the policy due the insured amounted to $1,506.25, and the appellant, without notice to the insured, appropriated $33.75 of this fund to carry the policy to September 27th, the day the note fell due. On that day the company, without the knowledge or consent of the insured, made a settlement of the matter in this way: It first arbitrarily deducted 25 per cent of the total reserve, leaving $1,138.34; from this it deducted $33.75, the charge for carrying the policy from April 5 to September 27, 1897, and $1,000, the amount applied to payment of the note, which left, according to its calculation, $104.59 with which to purchase non-participating insurance payable at his death. Barnett was then 51 years of age, and the company reported to him that the balance of the reserve to his credit would purchase a policy for $215. The insured died in the year 1903, whereupon the appellant company

offered to pay to his administrator $215, which he
refused to accept, and instituted this action for an
adjudication of his rights under the policy. Appellee
claims that, under the terms of the policy, his dece-
dent, on the 6th day of April, 1897, when the policy
lapsed, was entitled to paid-up insurance for twelve-
twentieths of $5,000, which amounted to $3,000. This
was controverted by appellant, claiming that the
terms of the note, which was executed for $1,000,
changed the terms of the policy. The lower court
adopted appellee's view, and rendered judgment in
his favor for the $3,000, subject to a credit of the note
for $1,000, with interest, leaving the judgment in
favor of appellee for $1,802.

It seems to us that the appellant was entitled to
have a settlement of the policy when it lapsed; it was
not obligated to await the death of the insured before
adjusting the same; by so doing the interest on the
note might have exceeded the value of the policy, and
it would have lost money as a result. The rights of
the parties were not changed by reason of the fact
that the insured died within a few years thereafter.
A true basis for the settlement is to ascertain the
actual cash value of the policy at the time it lapsed,
April 6, 1897, considering the age of the insured and
his expectancy of life under the mortality table; from
that sum deduct the debt of $971.50, owed by the
decedent, reduced by reason of payment of interest
in advance. The balance would have been due to the
assured. However, as the parties have treated this
case upon another principle, and, as the result reached
is practically the same, we will determine it upon the
method fixed in the pleadings and proof. We do not
think appellant had the right to deduct 25 per cent of
the reserve of $1,506.25; nor did it have the right to

apply the $33.75 for the purpose of continuing the policy. This reserve, which belonged in full to the insured, after deducting the amount due on the note at the time the policy lapsed, April 6, 1897, would have purchased a non-participating policy, payable at the death of Barnett, for the sum of $1,104.50, and for this sum appellee is entitled to a judgment, with interest from the 10th day of September, 1903, until paid.

For these reasons, the judgment is reversed, and remanded, for further proceedings consistent herewith.

RESPONSE TO PETITION FOR REHEARING BY CHIEF JUSTICE O'REAR.

Appellant asks a modification of the opinion delivered herein on November 2, 1906, on the ground that the court while applying principles of law not further disputed, was in error in the application of the facts. The petition states as a fact, and quotes with assurance, certain testimony noted below, the practice of appellant and "all other standard life insurance companies," in applying the reserves of lapsed policies to the purchase of paid-up insurance, that the companies retain 25 per cent of the reserve as a surrender charge, and apply only the 75 per cent remainder, less indebtedness to the company, in buying paid-up insurance. It is also stated, in the petition for rehearing and in the testimony alluded to, that this practice is warranted by and in line with the Kentucky Statutes on this subject. In the original opinion it was said that this deduction of 25 per cent of the reserve was irregular and unauthorized. It is argued in response that the court is in error in

.ignoring a practice by appellant which the statutes of this State warrant.

The testimony alluded to is the deposition of Mr. Jesse J. Barker in the record, as follows: "Here it seems necessary to explain what is meant by 're-serve' and 'cash surrender value,' as used in the policy and note. The Penn Mutual Life Insurance Company, in common with all other standard life insurance companies, pursues the following course in regard to its policies: A level premium is charged to the insured throughout the period of the life of the policy. As the risk of death is constantly increasing, the level or average premium during the earlier years of the policy exceeds the amount of risk run by the company in any given year. During the latter years of the life of the policy the premium is less than the amount of risk in any given year. The difference between the premium charged in any one of the earlier years and the actual amount of risk run in that year is carried by the company into its 'reserve,' and thus a fund is created to meet the years when the premium is less than the risk. When a policy ceases to be in force, either by virtue of a surrender or lapse by rea-son of non-payment of premiums or otherwise, it may happen that under the terms of the contract the insured is entitled either to receive a cash value for his policy or to paid-up insurance of such amount as said cash value will purchase. In order to ascertain the sum which will be paid to the insured in cash, the entire reserve derived from premiums paid under the policy in question is first ascertained, and of the sum thus ascertained 75 per cent is paid to the insured. The remaining 25 per cent is retained by the company as part of its general reserve fund. The reason for retention is that, if the full reserve were to be paid in cash to each policy holder upon demand (as few, if

any, impaired risks would retire on these terms), there would be a disturbance of the average which lies at the whole business of insurance, and a consequent deficiency in the fund for the protection of the policies which remain in force. The deduction or retention of 25 per cent of the principal just stated is a reasonable retention, and is about 8 per cent less than the retention authorized by the non-forfeiture statute of the State of Kentucky. In case it is the right of the insured to receive a paid-up policy, it is the custom of the company to apply to the purchase of such paid-up insurance the full reserve, less a deduction of only 20 per cent; such deduction being found on the experience of the company to be sufficient for the protection of other policies. Where the company has made an advance to its policy holder upon the security of his policy, it may happen, in accordance with the terms of the policy as modified by the contract of loan, that the policy lapses either by reason of failure to pay the loan or by reason of the failure to pay a premium. In the event of such a lapse, it is the custom of the company to divide the reserve into two parts. One part is such a sum that 75 per cent thereof is sufficient to meet the obligation of the insured upon its note, and and the other part represents the balance of the reserve, and of said balance 80 per cent is applied to the purchase of paid-up insurance for the benefit of the policy holder. The cash surrender value is thus not less than 75 per cent of the reserve.''

As a matter of fact the policy in suit in this case was issued at a time when there was no statute of this State requiring life insurance companies to allow or provide for issuing paid-up insurance upon lapsed policies. Section 659, Ky. Stat., 1894, a part of the act of 1891-93, provided: ''All policies hitherto issued by any domestic life insurance company shall be sub-

ject to the provisions of law applicable and in force at the date of such issue. No policy of life or endowment insurance hereafter issued by any such company shall become forfeited or void for non-payment of premium after, in ordinary insurance two, and in industrial insurance five, full annual premiums in cash have been paid thereon; but in case of default in the payment of any subsequent premium, then, without any further stipulation or act except as herein provided, such policy shall be binding upon the company for the amount of paid-up insurance which the then net value of the policy and all dividend additions thereon, computed by the rule of section 653, less any indebtedness to the company on account of said policy, and less the surrender charge provided herein, will purchase as a net single premium for life, or endowment insurance maturing or terminating at the time and in the manner provided in the original policy contract; and such default shall not change or affect the conditions or terms of the policy, except as regards the payment of premiums and the amount payable thereon: Provided, That policies of industrial life companies shall be surrendered to the company, and application for said paid-up policy be made in writing within eight weeks after said default, on blanks obtainable from the company for that purpose. Said surrender charge shall be eight per cent of the insurance value of the policy at the date of default, which insurance value is the present value of all the normal future yearly costs of insurance which by its terms and policy is exposed to pay in case of its continuance, computed upon the rate of mortality and interest assumed in section 653. Every such policy subject to the conditions as to policies of industrial life companies as hereinbefore prescribed, after the payment of, in ordinary insurance two, and

in industrial insurance five, full annual premiums
thereon, in cash, shall have a surrender value, which
shall be not less than two-thirds of its net value, com-
puted by the rule of section 653, less any indebtedness
to the company on account of the said policy; and its
holder may, upon any subsequent anniversary of its
issue, surrender the same and claim and recover from
the company such surrender value in cash. Upon the
surrender, on any anniversary of its issue, of a policy
which has become paid up, by force of the statute
upon default in payment of premiums, after two full
annual premiums have been paid, the holder shall be
entitled to not less than two-thirds of its then net
value, computed by the rule of section 653. On policies
of industrial insurance, on which the weekly prem-
iums are not more than fifty cents each, the sur-
render value in all cases shall be payable in cash.
Upon the surrender, on any anniversary of its issue,
of a policy which has become paid up, after the pay-
ment of five full annual premiums, by force of the
statute upon default in payment of premium, the
holder shall be entitled to not less than two-thirds of
its net value, payable in cash. Any condition or stip-
ulation in the policy, or elsewhere, contrary to the
provisions of this section, and any waiver of such
provisions by the assured shall be void.''

It is suggested that the settlement in this case was
had under this statute. But this is an error. For the
statute is restricted in its application to policies
issued subsequent to its enactment. So is the amend-
ment of section 659, Ky. Stat. (the act of 1902), found
in the edition of 1903, Carroll's Statutes. That sec-
tion, as now amended, reads:

''All policies hitherto issued by any domestic life
insurance company shall be subject to the provisions

of law applicable and in force at the date of such issue.

"Subdivision 2. No policy of life or endowment insurance upon the ordinary plan hereafter issued by any domestic life insurance company shall become forfeit or void, for non-payment of premiums, after three full years' premiums, in cash, have been paid thereon; but, in case of default in the payment of any premium thereafter, then, without any further stipulation or act, except as herein provided, such policy shall be binding upon the company for the amount of paid-up insurance, which, according to the company's published tables of single premiums, the net value of the policy on such anniversary, and all dividend additions thereon, computed by the rule of section 116 of the act, to which this is amendatory, and which section is section 653, Kentucky Statutes, will purchase as a net single premium for life or endowment insurance maturing and terminating at the time and in the manner provided in the original policy; and such default shall not change or affect the condition or terms of the policy, except as regards the payment of premium and the amount payable thereon:    Provided, however, That any company may contract with its policy holders to furnish, in lieu of the paid-up insurance provided for in this section, any other form of life insurance lawful in this commonwealth, of not less value.

"The reserve of such paid-up insurance shall not be less than two-thirds of the reserve of the original policy; but any outstanding indebtedness on the account of said policy shall operate to reduce the said paid-up insurance, computed by the rule of section 116 of the act, to which this is amendatory, and which section is section 653, Kentucky Statutes.

"Every such policy after the payment of three full

years' premium thereon, in cash, shall have a sur-
render value, which shall not be less than seventy per
cent of the reserve that would be required for the
aforesaid paid-up insurance, after deducting any
indebtedness as above provided, computed by the rule
of section 116 of the act, to which this is amendatory,
and which section is section 653, Kentucky Statutes.

"Subdivision 3. No policy of life or endowment
insurance upon the industrial plan hereafter issued
by any domestic life insurance company shall become
forfeit or void, by non-payment of premiums, after
five full years' premiums, in cash, have been paid
thereon, but in case of default on above mentioned or
subsequent anniversary in the payment of any pre-
mium thereafter, then, without any further stipula-
tion or act, except as herein provided, 'such policy
shall be binding upon the company for the amount of
paid-up insurance, which, according to the company's
published table of single premiums, the net value of
the policy on such anniversary, and all dividend addi-
tions thereon, computed by the rule of section 116 of
the act, to which this is amendatory, and which section
is section 653, Kentucky Statutes, will purchase as a
net single premium for life or endowment insurance,
maturing or terminating at the time and in the man-
ner provided in the original policy; and such default
shall not change or affect the conditions or terms of
the policy, except as regards the payment of pre-
miums and the amount payable thereon: Provided.
That any company may contract with its policy-
holders to furnish, in lieu of the paid-up insurance
provided for in this section, any other form of life
insurance lawful in this commonwealth, of not less
value. And provided, further, that on industrial
policies defaulting and surrendered to the company
on their fifth, or any succeeding anniversary, applica-

tion for said paid-up policy shall be made in writing within eight weeks after said default, on blanks obtainable from the company for that purpose.

"The reserve for such paid-up insurance shall not be less than two-thirds of the reserve of the original policy; but, any outstanding indebtedness on account of said policy shall operate to reduce said paid-up insurance in proportions to its ratio to the reserve for such paid-up insurance, computed by the rule of section 116 of·the act, of which this.is amendatory, and which section is section 653, Kentucky Statutes.

"Every such policy, subject to conditions as to paid-up surrender values, after the payment of five full years' premiums thereon, shall have a surrender value which shall not be less than seventy per cent of the reserve that would be required for the aforesaid paid-up insurance, after deducting for all indebtedness as above provided, computed by the rule of section 116 of the act, of which this is amendatory, and which section is section 653, Kentucky Statutes.

"On policies of industrial insurance, where the weekly premiums are less than fifty cents each, it shall be optional with the company issuing said policy, to pay either the cash surrender value or issue a paid-up policy of insurance, and upon such payments, the company shall be absolutely released from all further claims or demands whatsoever under or by reason of said policies, which shall then be canceled.

"The provisions of this section shall not apply to policies issued on the lives of persons under ten years of age, until five years after attaining that age.

"Subdivison 4. In construing the provisions of this act, ordinary insurance, or insurance upon the ordinary plan, shall be considered to be insurance which may be paid for by annual premiums, or by semi-annual, or quarterly, or other installments thereon at

the option of the company, and industrial insurance shall be considered as insurance purchasable solely by weekly premiums.

"Any condition or stipulation in the policy of insurance, or elsewhere, contrary to the provisions of this section, and any waiver of such provisions by the assured, shall be void."

Appellant's contention is, sharply, that it had the right, and under the statutes quoted above the same right is given, to deduct a surrender charge of not more than one-third of the reserve when a paid-up policy is issued upon a lapsed policy. To this we are unable to agree. As there was no statute on the subject in Kentucky when the policy in this case—the original contract—was issued, and as no statute of the parent State of the corporation is relied on, the contract set out in the policy is the sole measure of the parties' rights concerning paid-up insurance. It will be seen from the quoted clauses found in the original opinion that, after five full premiums had been paid, the insured was entitled to a paid-up policy for as many twentieths of the original sum insured as there were premiums paid, "provided all outstanding liability on this policy is paid off." As 12 premiums had been paid, the insured would have been entitled to twelve-twentieths of $5,000 (the original insurance), if there had been no indebtedness. The only real question then was, where should the indebtedness be credited? On the reserve, which was used in buying the paid-up insurance; or, on the amount of paid-up insurance? We held that it should be credited on the reserve as of the date of the lapse. The policy, in this provision, deals with the application of the reserve to the purchase of the paid-up insurance. The reserve is that part of all the premiums paid on the policy, which, when increased by

compound interest at 4 1-2 per cent, Actuaries' Table
of Mortality, would be sufficient to pay the assured or
his estate the full amount assured when the policy
matures.    The principle is discussed at some length
in the recent opinion of U. S. Life Ins. Co. of N. Y. v.
Spinks, 126 Ky. —, 96 S. W. 889, 29 Ky. Law Rep. 960.
In this policy there is no provision for a surrender
charge in issuing a paid-up policy under paragraph
11, quoted in the original opinion.    The agreement
was to apply the "full reserve" of this policy to buy-
ing for the assured either extended or paid-up insur-
ance.    The assured elected to take, and the company
to issue, paid-up insurance.    The "full reserve" of
this policy bought of paid-up insurance, under the
provisions of clause 2 of section 11, above quoted, as
many twentieths of $5,000 as the number of premiums
paid bore to the total number to be paid (20), after
deducting from such reserve the indebtedness of the
assured.    As the assured had, by borrowing from his
insurer a certain sum and not paying it back, already
anticipated and consumed that much of his "re-
serve," it would be manifestly unjust to allow him to
get it again by making the insurer account for it as
so much money due him, in giving him paid-up insur-
ance.    Had the insured then paid back in cash the
loan, he would have been entitled to a paid-up policy
for such sum as his "full reserve" would have bought
under the agreement in the policy.    The language of
the policy does not admit of any other construction.
There is no suggestion in it that the company would
exact or retain a surrender charge.    On the contrary,
the "full reserve" is to be accounted for in paid-up
insurance.

But the witness Barker says that it was and is the
custom with appellant company and all other stan-
dard insurance companies to deduct 25 per cent of

the reserve as a surrender charge. If such was the custom, then by the contract in this policy an exception is indicated. To apply the custom to this policy would be to take from the assured $375 which belonged to him, and apply it contrary to the contract. Appellant complains at the expression in the opinion, "This reserve which belonged in full to the insured." The reserve does belong in full to the insured, in the sense that it is the security, and in reality the only security, he had for the fulfillment by the insurer of its undertaking to him. He had contributed it in the payment of his premiums, and it is required as the very basis of all sound life insurance, and now by our statute (section 653), to be maintained and kept intact in order to make good the obligation to him. It cannot be applied to anything except his policy without impairing its security. In the statutes of some of the States it is allowed, and in the section 659 as it was originally this State recognized the right of the insurer to deduct a surrender charge upon issuing a paid-up policy in lieu of one lapsed. But the present statute (section 659, supra) does not so provide now. and we perceive no reason for so providing. There is a reason for allowing a surrender charge in case a cash surrender is allowed. The reason is expressed in one form by Mr. Barker in his testimony quoted above. But it cannot apply to the case of issuing a paid-up policy; for then the policy holder does not withdraw anything from the company's assets. He does not "disturb the average" upon which the insurance was calculated. He stays in, and his money stays in, for the original purpose of the contract.

Nor do our statutes warrant a contrary view. In the old section, the expression, "the holder shall be entitled to not less than two-thirds of its then net

value computed by the rule of section 653," had reference to cash surrender values alone. The present section 659 also deals with "cash surrender" values, and allows a charge to be reserved in such case; but as to paid-up insurance the present statute requires the whole of the reserve of the defaulted policy to be applied to the purchase of paid-up insurance, unless the parties agree to a cash surrender in lieu thereof. Appellant construes this expression in the section of the statute, "The reserve for such paid-up insurance shall not be less than two-thirds of the reserve of the original policy," as indicating that one-third of the original reserve is not to be applied to the purchase of the paid-up insurance. This is a complete misconception of the office of that phrase. Section 653, Ky. Stats., 1903, requires all life insurance companies to maintain a certain reserve for all their policies. That reserve is such part of all the premiums paid on each of the policies in force as will, when put at compound interest at the per cent. and upon the mortality tables named in section, be sufficient to redeem each of the policies as they mature. Pursuing that course, the "reserve"—which may be likened to a redemption fund or sinking fund for the policies—can be ascertained at any date as to any policy of the respective classes issued by the company. Now section 659, Ky. Stats., requires that after certain premiums have been paid there shall not be a forfeiture of that policy's reserve because of future nonpayment of premiums, but that by virtue alone of such previous payments, and subsequent failure to pay any premium when due, the reserve—the whole of it—belonging to that policy shall be applied as a single premium in buying for the assured paid-up insurance of the same kind, and so forth. Applied how? By treating it as so much cash, and applying

it upon the company's published rate of a "single net premium for life." That expression is technical. No one nowadays ever pays a single net premium for life in buying life insurance. At least it may be safely assumed that it is extremely rare, if ever done.

We know that all premiums are based upon three items: One, and always the first, the proportion of it necessary at interest compounded, based upon the expectancy of the life insured, to pay the assured the sum insured when the policy matures; two, the proportion necessary to pay its part of death losses occuring in its class (these two are the net premiums); and, three, enough more to pay its share of expenses and incidental losses in the business. The latter is called "loading." There is no limit to the amount of loading a company may do. It all depends on whether the insured will pay it. If he does, unless that which is charged in excess of actual expenses and losses is returned to him in "dividends," he never gets any benefit from it. So, after one is already in, and his policy has lapsed for default in premium, the statute automatically converts his reserve (and "dividend additions") into a fund to buy paid-up insurance. But the sentence last herein quoted from the statute is to keep the insurer from consuming too much of the insured's reserve by loading it to death. It is therefore required that this single premium, as published, must in all events buy such insurance as that its reserve (for all sane and safe life insurance must have a reserve) shall not be less than two-thirds of the original reserve. In other words, the "single premium," alluded to in the statute, must not consume more than one-third of the defaulting policy holder's reserve for any other purpose than that of finally redeeming that identical policy. We have gone thus fully into a discussion of our statutes to show

that there is no warrant for saying that they recognize that the insurer may charge an independent arbitrary surrender charge in issuing paid-up insurance upon a defaulted policy.

Finally, the note in this case, in so far as it attempted to allow such a charge was usurious. N. Y. Life Ins. Co. v. Curry & Bro., 115 Ky., 100, 72 S. W., 736, 61 L. R. A., 268, 103 Am. St. Rep., 297. Where the original opinion uses the expression, "A true basis for the settlement is to ascertain the actual cash value of the policy at the time it lapsed," it was meant the "net value" of the policy at that date; net value being equivalent to "reserve." There is a distinction between the "net value" and the "cash surrender value" of a life insurance policy.

Petitions for rehearing and for modification of opinion are overruled.