# Merion v. Kentucky Home Mut. Life Ins. Co.

May 24, 1940.

W. T. Davis, Special Judge.

J. Leonard Davis for appellant.

L. H. Hilton and Woodward, Dawson & Hobson for appellee.

OPINION PER CURIAM—Affirming.

The Inter-Southern Life Insurance Company issued a Compound Option Twenty Pay Life policy, non-par-

ticipating, in the amount of $3,000 to Graydon F. Merion on November 30, 1927. The policy also provided for disability and double indemnity benefits. The premiums were paid quarterly. The appellant, Iva Souder Merion, wife of the insured, was designated as the beneficiary. The premiums were paid for six and one-half years, that is, to May 30, 1934. On October 9, 1931, Merion borrowed $219 on his policy. To the policy were attached dividend coupons which provided that the Inter-Southern would pay, subject to the conditions of the policy, certain amounts on annual premium dates, provided all premiums due on the policy up to and including said dates were paid in full.

As to the benefits to be derived from the coupons, the policy provided:

"A. The coupons on the reverse side of this instrument may be surrendered at any time after their respective maturities in part payment of premiums upon said policy as they fall due; or

"B. The amount of any surrendered and matured coupons may be left on deposit with the Company at interest to be compounded annually at the rate of four per centum from the dates of their respective maturities: Thereafter,

"(a) The Insured may at any time withdraw said amounts, with accumulated interest as aforesaid, upon surrender of such matured coupons at the Home Office of the Company; or

"(b) In event of the death of the Insured said amounts with accumulated interest as aforesaid shall be paid to the beneficiary of said policy."

Coupons Nos. 1 and 2 were applied on the payment of premiums. Nos. 3 and 4 were left on deposit with the Inter-Southern and became involved in the reinsurance agreement between the receivers of the Inter-Southern and the Kentucky Home Life Insurance Company in 1932. Coupons Nos. 5 and 6 were left on deposit with the Home Life.

Under the reinsurance agreement the Home Life Company had a reserve lien of $52.16 and a coupon lien (coupons 3 and 4) of $29.05, or a total of $81.21 against Merion's policy. The cash value of his policy on May

30, 1934, the date when it lapsed, was $340.50. From this amount the Company deducted the loan with interest and the reserve lien with interest, which items amounted to $277.33. According to the Company's calculations, this left $63.17 available for extended insurance. This amount would carry a policy of $2,718 ($3,000 less the $219 loan) for one year and 306 days; or until March 31, 1936. Merion died March 13, 1937.

The appellant filed her claim with the Company, and it denied liability for any amount other than the coupon dividend No. 5 with interest ($29.09) and the further sum of $23.91, representing the insured's equities in coupon dividends Nos. 3 and 4, to become due and payable August 8, 1938, under the reinsurance agreement as amended. Mrs. Merion filed an ordinary action against the Company and it answered denying liability. After further pleadings were filed, the issues were joined and the trial began. While the appellant was introducing her evidence, the court set aside the swearing of the jury, being of the opinion that there was no issue of fact to be tried. The cause was continued, and, at the next term, a special judge was agreed upon for the trial of the case. The special judge ruled that the question involved was one of law and not of fact and refused a trial by jury. Upon hearing the case, the special judge ruled in favor of the defendant and dismissed the plaintiff's petition; hence this appeal.

The appellant first insists that the court erred in transferring the cause to the equity docket. It is our conclusion that the trial judge acted within his discretion in making the transfer, in view of Subsection 4, Section 10 of the Civil Code of Practice.

Another ground urged for reversal is that the coupon dividends should have been used to reduce the loan or to purchase extended insurance.

The reinsurance agreement between the Kentucky Home Life Insurance Company and the receivers of the Inter-Southern Life Insurance Company, approved by the Franklin circuit court on August 8, 1932, has been before this court in a number of cases, including Casteel v. Kentucky Home Life Insurance Company, 258 Ky. 304, 79 S. W. (2d) 941; Kentucky Home Life Insurance Company v. Miller, 262 Ky. 330, 90 S. W. (2d) 59; Kentucky Home Life Insurance Company v. Kittinger, 262

Ky. 525, 90 S. W. (2d) 673, 103 A. L. R. 1361; Kentucky Home Life Insurance Company v. Johnson, 263 Ky. 787, 93 S. W. (2d) 863, and Kentucky Home Life Insurance Company v. Leisman, 268 Ky. 825, 105 S. W. (2d) 1046. The terms and conditions of the agreement may be ascertained by reference to the opinions in those cases.

Appellant contends that Section 659 of the Kentucky Statutes requires the value of any dividend additions to be used in the purchase of extended insurance in case of lapse of a policy for nonpayment of premium, and that the clause in the policy providing that "in the event of the death of the insured said amounts (coupon dividends) with accumulated interest as aforesaid, shall be paid to the beneficiary" conflicts with the terms of the statute and is void. The applicable part of Section 659 reads:

"Subdivision 2. From and after the passage of this act, no policy of life or endowment insurance upon the ordinary plan, other than pure endowments with or without return of premiums, shall be issued or delivered in this state or be issued by any domestic life insurance company, unless the same shall contain in substance the following provision:

"(a) A provision that in event of default in premium payments, after premiums shall have been paid for three years, the insured shall be entitled to a stipulated form of insurance, the net value of which shall be at least equal to the reserve on the policy at the date of default (the policy to specify the mortality table and rate of interest adopted for computing such reserve and its conversion into paid-up or extended insurance) less a specified percentage (not more than two and one-half per cent) of the amount insured by the policy (and of existing dividend additions thereto, if any) and less any existing indebtedness to the company on or secured by the policy * * * "

The policy in question complied with the statute. Under the heading "Options on Surrender or Lapse," it provides as follows:

"Upon any default in payment of premiums, this policy may be surrendered to the Company prior to the expiration of the period of grace, Thereupon

"(2) If there be any indebtedness to the Company, provided the policy shall have been in force for three full years, such indebtedness shall be deducted from the amount which would otherwise be available as a cash value, and the Insured may, upon written request, have the remainder applied (a) to extend the insurance, without the right to loans or surrender values, for the full amount of the policy, less the indebtedness; or, (b) to procure a reduced amount of paid-up insurance payable at the death of the Insured; or, (c) receive such remainder as a cash value.

"The Company may, at its option, defer the payment of any cash value for a period not exceeding ninety days after application therefor has been received."

Under the heading "Nonforfeiture" is this provision:

"If the Insured shall fail to pay any premium when due, or within the period of grace, and shall not have exercised any of the foregoing options, the Company, subject to the other conditions of the policy, shall grant the extended insurance hereinbefore provided."

The statute does not require the insurer to apply matured dividend coupons to the purchase of paid-up or extended insurance upon default of premium payment, but leaves the parties free to make such disposition of them by contract as they may deem fit. The statute provides for the deduction from the reserve on the policy of a surrender charge not exceeding 2½ per cent of the dividend additions, in addition to 2½ per cent of the amount insured by the policy, in determining the net amount available for the purchase of paid-up or extended insurance. Matured dividend coupons are not dividend additions. A dividend addition is paid-up insurance purchased with the money derived from a dividend declared on the principal policy. The term "dividend addition" is defined thus in Jefferson v. New York Life Insurance Company, 151 Ky. 609, 152 S. W. 780, 783:

"It means something added to the policy in the shape or form of paid-up insurance. The term orig-

inated in this way: When a dividend was apportioned to a policy and not drawn by the policy holder in cash, or used by him in reducing his premium payments, the company would issue to the insured a paid-up policy, payable at his death, for such an amount as the dividend, applied as a single premium, would buy; and this little policy, fully paid-up, was appended to the original policy, and was called a 'dividend addition' to the policy. It, in no sense, represents unapportioned assets, or surplus, of the company, but has reference solely to paid-up insurance.''

Since the statute does not make it the duty of the insurer to use matured dividend coupons to purchase paid-up or extended insurance in the event of default in the payment of premium, such duty, if any, must be found in the contract of insurance. The policy in this case not only fails to impose such a duty upon the insurer, but does not give it the right to apply the money derived from the dividend coupon to the purchase of paid-up or extended insurance. The disposition of the coupon is left entirely within the control of the insured. The insurer has no option in the matter. In a supplementary agreement attached to and made a part of the policy the provisions under the heading ''Benefits Derived from Use of Coupons,'' heretofore quoted, fixed the rights of the parties in respect of the coupons. Under these provisions, the insured could have presented the matured coupons to the insurer and demanded that they be accepted in payment or part payment of premiums, or that they be paid to him in cash, or he could have left them on deposit with the insurer until his death, the face value thereof and accumulated interest thereon to be paid to the beneficiary named in the policy. If the company had used the value of the matured coupons to purchase extended insurance, the insured, at any time thereafter, could have presented the coupons to the company and demanded payment for the face amount thereof, plus accumulated interest, or, after his death, the beneficiary could have made a like demand. The policy is free from ambiguity in this respect. Appellant relies upon Yutz v. Commonwealth Life Insurance Company, 264 Ky. 142, 94 S. W. (2d) 326; Commonwealth Life Insurance Company v. Haskins, 259 Ky. 780, 83 S. W. (2d) 457; Commonwealth

Life Insurance Company v. Gault's Adm'rs, 256 Ky. 625, 76 S. W. (2d) 618, and other cases in which it has been broadly stated that upon default in payment of premium it is the duty of the insurer to use funds in its hands belonging to and then payable to the insured in the payment of premiums or in the purchase of paid-up or extended insurance, but in none of these cases was it held that this rule applied where the parties had the right to contract in respect of such a fund and the policy provided for its disposition in some other manner without leaving any choice in the matter with the insurer. In the present case the appellee's contractual obligation in respect to the matured coupons was to apply them in part payment of premiums upon the policy, if surrendered by the insured for that purpose, or to allow them to remain on deposit, drawing interest, the face amount thereof with accumulated interest to be paid to the insured at any time on demand or, in event of his death, to be paid to the beneficiary. The insurer possessed no right without the consent of the insured to apply the matured coupon in reduction of the policy loan or to use it in the purchase of extended insurance.

A case very similar to the present one is Williams v. Union Central Life Insurance Company, 291 U. S. 170, 54 S. Ct. 348, 349, 78 L. Ed. 711, 92 A. L. R. 693. In that case, the policy, under the heading "Dividend Options," read:

"Dividends may be withdrawn in cash; or applied to the payment of premiums; or left to accumulate with interest at three per cent., increased from surplus interest earnings as apportioned by the Directors, until the maturity of the policy, subject to withdrawal at any time; or applied to the purchase of paid-up participating additions to the policy, convertible into cash at any time for the amount of the original dividends or the reserve of the additions, if larger, but payment may be deferred by the Company ninety days from the date of application therefor."

Mr. Chief Justice Hughes, speaking for the court, said:

"There is no ambiguity in the terms of these options. They are clear and definite in the terminology of insurance, and each is to be applied with its

distinctive significance. No one of these options provides for the use of a dividend to procure extended insurance; that is, to procure an extension of the term of the insurance from the date to which premiums have been paid, without any further payment. Dividends may be withdrawn in cash or applied to the payment of premiums or left to accumulate with interest subject to withdrawal at any time. The further option to have dividends 'applied to the purchase of paid-up participating additions to the policy' is quite distinct from an option to procure extended insurance. A 'paid-up addition' to the policy, by the application of a dividend, is the amount added to the face of the policy and purchased by the use of the dividend as a single premium. For such paid-up additions there must be a legal reserve."

In the Williams case the court construed a Texas statute similar in all respects to Section 659 of our Statutes. The same contention was made there with reference to the effect of the statute as is made in the present case, but the court said:

"Petitioner insists that the phrase 'dividend additions,' as used in the statute, means 'dividends.' The Circuit Court of Appeals disagreed with this view, holding that 'dividend additions' are 'paid-up insurance in addition to the face of the policy and purchased with dividends.' We think that this construction is correct. It is in accord with the uncontradicted testimony which was given by actuaries upon the trial as to the general understanding of the phrase. It will be observed that the statutory provision refers to the reserve at the date of default on the policy 'and on any dividend additions thereto.' It thus refers to 'dividend additions' upon which there would be a reserve, that is, it would seem plainly, to paid-up insurance purchased by dividends, which would require a reserve."

From the considerations stated and the authorities reviewed we reach the conclusion that neither Section 659 of the Statutes nor any provision of the policy contract required the Company to apply dividend coupons to reduce the loan or to purchase extended insurance, but that, on the contrary, the Company was by the terms

of the policy contract prohibited from making any such application of the dividend coupons.

Nor do we find in the reinsurance agreement any provision even tending to impose on the appellee company the duty to apply the dividend coupons to a reduction of the loan or the purchase of extended insurance. The agreement did not change any of the options in respect to the use of coupon values granted by the policy and did not undertake to divest the insured of the discretion as to which option should be exercised as to the matured coupons. Indeed, if this agreement had any effect in this regard, such effect would rather tend to strengthen the position of the appellee rather than that of appellant since by the agreement the cash value of coupons was not available to policy holders during the three-year period the moratorium was in effect even had the Company desired to make the same available with the intention of using it to reduce the loan or purchase extended insurance. And it must be remembered that the rights and powers of the appellee company were fixed by the reinsurance agreement just as were the rights of the policy holders of the Inter-Southern and that the reinsurance agreement was in the nature of a court order which the reinsuring company had no right to violate. We find nothing in the reinsurance agreement supporting appellant's position.

Since neither the statute nor the policy contract nor the reinsurance agreement imposed on the appellee any duty to apply the dividend coupons to reduce the loan or purchase extended insurance, it follows that the judgment should be, and it is, affirmed.

The Whole Court sitting, Judge Cammack dissenting.

Judge Cammack (dissenting).

It is admitted that, had Merion's net equity in the coupon dividends been added to the cash surrender value before the $219 loan was deducted, the amount remaining would have been sufficient to carry the policy beyond the date of his death. I think this should have been done. It was said in the case of Commonwealth Life Ins. Co. v. Gault's Adm'rs, 256 Ky. 625, 76 S. W. (2d) 618, 620:

"It is an accepted rule: 'If an insurer is indebted

to an insured, and has, or should have, in its hands, sufficient funds belonging to and due him, to pay an assessment or a premium when due, it cannot forfeit its policy or certificate for non-payment; rather, it should appropriate such funds to prevent a forfeiture, no matter from what source such funds were derived.' Citing cases."

See also Cheek v. Commonwealth Life Insurance Co., 277 Ky. 677, 126 S. W. (2d) 1084. In other words, it is the duty of the insurer, in case of the lapse of a policy because of the failure to pay premiums, to use such funds of the insured as are in the hands of the insurer under the insurance contract to the best interest of the insured.

The appellee insists, however, that this rule has no application here, and in so doing stresses the contractual provisions of the policy as to the use of the coupon dividends and also the Gault case, supra. In that case Gault and his brother secured a loan of $8,000 from the Commonwealth Life Insurance Company on certain real estate. As security for the loan they executed a mortgage on their real estate, and as additional security assigned to the Company life insurance policies which it had issued to them in the amount of $8,000 each. At the time Gault's policy lapsed for non-payment of premiums the loan on the real estate had been reduced to about $4,100 and he had a $1,040 loan on his policy. It was contended the Company had money in its hands due Gault which should have been applied to the payment of a premium note. Dividends amounting to $428.42 had accrued under the policy. The policy provided that the dividends could be left with the Company and that:

"Should the Insured not elect the Special Provision or the Additional Special Provision as contained in this Policy, then each dividend may be used in reduction of the premium then due, or if the premium be paid in full may be used to purchase paid-up additions payable with the Policy, or left with the Company to accumulate at interest. Should the premiums be paid in full and the dividends allowed to remain with the Company at interest, then said unpaid dividends, with compound interest at the rate of 3% per annum for each full year after the dividend was due, will be added to the face of the Pol-

icy in event of the death of the Insured, or paid in cash upon presentation to the Company. Paid-up additions shall be non-forfeitable and will participate in the surplus as provided above. Such additions may be reconverted into cash at the end of any anniversary upon request by the Insured, while this Policy is in full force.''

In holding that the pledge of the policy to secure the loan on the real estate carried with it the dividend additions or dividend coupons, this Court said:

"Gault had assigned the policy, and by this provision of the mortgage pledged it to secure the real estate loan. This pledge inevitably carried with it the dividend additions to secure the same loan, and therefore there was nothing in the company's possession out of which his premium could have been paid. To allow Gault the benefit of the dividend additions or dividend coupons for the purpose of paying the premium or any part thereof, as evidenced by the series of premium notes, would be contrary to the express provisions of the policy and a violation of this clause of the mortgage.

"Gault having failed to elect to direct the disposition of the annual dividend and thereby allowed the same to become under the express provisions of the policy 'paid up additions payable with the policy,' his assignment of the policy to the company to secure the real estate loan carried with it, and pledged the paid-up additions or dividend coupons as collateral to secure the real estate loan. At the date of his failure to pay the installment premium note due January 1st, the insurance company, by virtue of the assignment of the policy, and the language of the mortgage, had an enforceable lien on the paid-up additions or dividend coupons, the same as it had on the policy itself. Forman v. Proctor, 9 B. Mon. 124; Parks v. Parks, 9 Ky. Law Rep. 346; Osborn v. Taylor, 9 Ky. Law Rep. 495. The insurance company having under its assignment and the provision of its mortgage a lien on the policy to secure the real estate loan, the paid-up additions or dividend coupons were not funds in the possession of the company to which Gault was entitled for the purpose of paying the premium note or notes.''

In commenting upon the Gault case, Judge Richardson, who was also the author of that opinion, said in the case of Yutz v. Commonwealth Life Ins. Co., 264 Ky. 142, 94 S. W. (2d) 326, 327, that:

"* * * The decisive question in that case [Gault case] was, the insured had assigned to the insurer the policy to pay a debt which he owed it, other than that commonly known as a 'policy loan,' and we ruled he was without right, therefore, to require the insurer to surrender its lien on the dividends existing by virtue of his assignment of the policy, for the purpose of paying the defaulted premium."

It can be seen, therefore, that the circumstances in the Gault case are materially different from those in the case at bar. Here there was no assignment of the policy, merely a policy loan. It seems to me that the Court is departing somewhat from the rules laid down in the Gault case.

While there may be technical distinctions between the terms "dividend additions," "dividends" and "coupons," I think that the coupon dividends in Merion's policy come within the purview of Section 659 of the Statutes. The coupon dividend provisions of the policy, as well as those relating to disability and double indemnity benefits, all grew out of and were parts of the insurance contract relationship between Merion and the Company. New York Life Ins. Co. v. McCane, 276 Ky. 712, 124 S. W. (2d) 1057. Furthermore, these coupon dividends were considered a part of the policy when the 60 per cent lien was applied to coupons 3 and 4 under the reinsurance agreement. The agreement also provided for the withholding of the insured's equities in the coupons for a stated period. While the facts and circumstances in the cases of Northwestern Life Ins. Co. v. Barker's Ex'x, 241 Ky. 490, 44 S. W. (2d) 292, and Commonwealth Life Ins. Co. v. Haskins, 259 Ky. 780, 83 S. W. (2d) 457, are not on all fours with the case at bar, those cases support the views stated herein. See also Forman v. Mutual Life Ins. Co., 173 Ky. 547, 191 S. W. 279, L. R. A. 1918F, 330, Ann. Cas. 1918E, 880.

It is obvious that the following wording in the loan agreement executed by Merion has no bearing on the question: "In no case shall coupon values be used in determining or calculating extended or paid up insur-

ance.'' See also Commonwealth Life Ins. Co. v. Haskins, supra. The coupon dividends should have been used in reducing the loan, leaving the remainder of the cash value for the determination and calculation of the amount of extended or paid up insurance.

For the foregoing reasons, I dissent from the conclusions reached by the majority of the Court.