## JEFFERSON STANDARD LIFE INS. CO. v. ADAMS.

### No. 9024.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1942.

R. L. Blackwell, of Louisville, Ky. (Wm. Marshall Bullitt, of Louisville, Ky., A. E. Boyd, of Paducah, Ky., Robt. Lee Blackwell and Bruce & Bullitt, all of Louisville, Ky., and Boyd & Boyd, of Paducah, Ky., on the brief), for appellant.

L. B. Alexander, of Paducah, Ky. (L. B. Alexander and Wheeler & Shelbourne, all of Paducah, Ky., on the brief), for appellee.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

From a judgment against the Jefferson Standard Life Insurance Company, for life insurance, the company appeals, claiming lapse of policy for nonpayment of premium, and that it was not in effect at the time of the death of the insured, on July 15, 1936. The trial court held that at the time of default in the payment of the last premium, the policy had a reserve of $55.-64; that according to the law of Kentucky

and the provisions of the contract of insurance, the company was obliged to use such reserve, until exhausted, to carry a policy of extended life insurance; and that if such reserve had been so used, a policy of extended insurance would have been in force beyond the date of death of the insured.

Appellant contends that, upon default in payment of premium, the insured was only entitled to a *continuance of the policy in force* until its *cash value* had been used up; and that the cash value, in this case, was not sufficient to carry the policy for a period up to the date of the death of the insured.

Appellee claims that, upon default in premium payment, the insurance company was obliged to carry a *policy of extended insurance* until the *reserve* of the original policy had been exhausted; and that such reserve was sufficient to carry such a policy beyond the date of insured's death.

One important difference in these contentions is between the original policy in force, and a policy of extended insurance; and between the cash value of the policy at the time of default, and the reserve. The policy in force was for life and disability insurance. The policy of extended insurance would be, apparently, only for life insurance. The original policy was for $5,000; a policy of extended insurance would have been for $4,462.06—computed by subtracting outstanding indebtedness from the face amount of the original policy. Obviously, the premium necessary to carry a policy of $4,462.06, for extended insurance, would be considerably less than the premium required to carry a policy of life and disability insurance in the face amount of $5,000.

Appellee contends that the reserve on the policy in force at the date of default, amounted to $55.64. This sum would have carried a policy of $4,462.06 for extended insurance to October 9, 1936—beyond the death of insured, which occurred July 15, 1936. But appellant argues that the cash value, and not the reserve, is the amount to be used to continue the policy in force; that the cash value of the policy in force, at the time of default, was only $7.06; that this sum would have carried such policy—in the face amount of $5,000—only to October 3, 1935; and that it would, therefore, have expired long before insured's death.

Moreover, appellant shows that, even if the reserve of $55.64, as claimed by appellee, should be used to continue the policy in force, such sum would have continued such a policy of $5,000 for life and disability insurance, only until January 2, 1936.

Without deductions for outstanding indebtedness, the reserve on the life and disability insurance policy of $5,000, at the time of the insured's default in the payment of the last premium, was $586.75. This sum is based on the American Experience Table of Mortality, with interest computed at 3% on the select and ultimate basis; and it was set forth in the policy that the reserve, under the contract of insurance, was based on such table, and at such interest rate. From this reserve of $586.75, in order to arrive at the net reserve on the policy, the trial court deducted outstanding loan indebtedness against the policy, aggregating $537.94, leaving $48.81, which sum the court adopted as the reserve on the policy, itself, as of September 22, 1935—the date of default in premium payment. Both parties agree that the reserve computed on the specified mortality tables and at the specified rate of interest, amounts to $48.81.

Appellee contends that, to this reserve, must be added a dividend of $6.83, declared before the default in premium payment, and that the reserve for extended life insurance, therefore, amounts to $55.64. As previously mentioned, this sum would have carried a policy of extended insurance through the date of insured's death.

Appellant denies that such dividend should be credited, inasmuch as it was provided in the policy that dividends would be due and payable only upon payment of the premium next succeeding the declaration of such dividend, which, in this case, was not paid. Appellant, therefore, computes the sum available for payment of extended insurance as the above-mentioned reserve of $48.81, less a reduction therefrom of a surrender charge of $41.75—or a sum for payment of insurance after lapse of the original policy, in the amount of $7.06. This claimed surrender charge is in accordance with the table of guaranteed cash or loan values set forth in the policy; and such a surrender or loan charge was contemplated by the parties to the contract of insurance, inasmuch as it was therein stated that no surrender charge exceeding 2½% of the face amount of the policy, had

been deducted from the reserve in computing surrender or loan values, and that "extended insurance shall be for the face amount of this policy less the indebtedness, and for such period as the reduced cash surrender value will purchase." In answer to this contention, appellee replies that the surrender charge provided in the policy is void, as illegal and against public policy.

Unless appellee is credited with the dividend, and unless the surrender charge is denied, she cannot recover in this case, as, otherwise, there would not be a value remaining, after lapse of the policy, sufficient to pay the premium for a continuation of the original policy, *or for extended insurance,* up to and including the date of death of the insured.

If the insured was not entitled to a policy of extended insurance on default of premium payment, but was limited to a *continuation in force of the original policy,* appellee would be unable to recover in this case, inasmuch as the reserve, as found by the trial court, would be insufficient to continue such policy in effect through the date of insured's death.

If it be assumed that the insured, or his beneficiary, was entitled, upon default of premium payment, to extended insurance, rather than a continuation in force of the original policy, the decisive questions then arising are whether the reserve of $55.64 should be adopted as the sum to be used for payment of a policy of extended insurance, or whether a cash value,—consisting of the reserve less the surrender charge as computed from the tables in the policy —amounting to $7.06, should be used for this purpose.

The trial court, in computing the amount available as net reserve for payment of a policy of extended insurance after default in premium payment, adopted the reserve computed on the basis of the specified mortality tables and interest rate; added thereto the amount of the dividend in question; and held that appellant was not entitled to deduct a surrender charge. Judgment was, accordingly, entered in favor of appellee, in the amount claimed, as representing the amount of the policy of extended insurance.

Counsel have ably presented exhaustive arguments on the validity of the policy provisions limiting payment of dividends to policy holders who pay their premiums;

the right of appellee to extended insurance, rather than a continuation in force of the original policy; and the legality of the surrender charge. We find it sufficient to determine this case on the issue of the legality of the surrender charge.

It is provided by Kentucky statute [Sec. 659, Carroll's Kentucky Statutes; Baldwin's Revisions (1930) (1936), Kentucky Acts, 1922, Ch. 56, p. 181], in effect when the policy in this case was issued, that no policy of life or endowment insurance upon the ordinary plan, shall be issued or delivered unless the same shall contain in substance, the following provision: "(a) A provision that in event of default in premium payments, after premiums shall have been paid for three years, the insured shall be entitled to a stipulated form of insurance, the net value of which shall be at least equal to the reserve on the policy at the date of default (the policy to specify the mortality table and rate of interest adopted for computing such reserve and its conversion into paid-up or extended insurance) less a specified percentage (not more than two and one-half per cent) of the amount insured by the policy (and of existing dividend additions thereto, if any) and less any existing indebtedness to the company on or secured by the policy, provided, however, that the said reserve before any deductions have been made shall not be less than if computed in accordance with § 653 of the Kentucky Statutes * * *."

The policy in question in conformity with the statute, specified the American Experience Table of Mortality. The rate of interest adopted for computing the reserve, was set forth as 3% on the select and ultimate basis. The policy further provided, in its table of guaranteed values, for a surrender charge not exceeding 2½% of the amount insured by the policy. The surrender charge was actually $41.75, although a surrender charge of 2½% of the face value of the policy would have amounted to $125.00. In brief, the statute in effect at the time that the policy in this case was issued, provided for a surrender charge; and the policy, in question, also stipulated for a surrender charge, less than that permitted by statute.

In support of the contention of appellee that such a surrender charge is illegal, she relies on several Kentucky cases; and

although these authorities forcibly express the statement that a surrender charge is illegal, we consider such cases inapplicable, inasmuch as the decisions were based on statutes which prohibited surrender charges, or on policies which did not permit them. In Penn's Mutual Life Ins. Co. v. Barnett's Adm'r, 124 Ky. 266, 96 S.W. 1120, 99 S.W. 228, the policy in controversy required the insurer to extend lapsed policies by using the "full reserve" to continue it. There was no statute in effect relating to surrender charges at the time the policy was executed. The court held that because the reserve on the policy belonged to the insured, its entire amount was available for extended insurance, and that the company was unjustified in making an arbitrary charge of 25% on lapse of the policy. Counsel for appellee, with special stress, calls attention to the opinion on re-hearing of the Barnett case, 124 Ky. 266, 99 S.W. 228, in which the court discussed many statutes, a number of which had been amended or repealed subsequent to the issuance of the policy then in controversy, with the result that a considerable part of the opinion is dicta. In its remarks, the court stated that the statute at that time in effect (though not in effect when the policy in litigation was issued), did not provide for a surrender charge upon issuance of a paid-up policy in lieu of one that had lapsed—although it did provide for such a charge in case of cash surrender; and it was remarked that while there was a reason for allowing a charge in case a cash surrender was allowed (because the policy holder then withdrew money from the company's assets, disturbing the average upon which the insurance was calculated), such a reason did not apply to the case of issuing a paid-up policy. Furthermore, the opinion added that the *statutes then in effect, did not warrant a view contrary to that thus expressed by the court.* This may all be very well, but such commentary is of no assistance in the disposition of the issue before us. Here, the statute does provide for a surrender charge on issuance of extended insurance, or on continuance in force of the original policy; and, in this case, it is unnecessary to explore actuarial fields or legislative policy to discover reasons for such statutory provisions. Peak v. Mutual Benefit Life Ins. Co., 172 Ky. 245, 189 S.W. 195, was decided on the ground that the statute in effect at the time of the execution of the policy in that case, required the insurance company, in event of lapse because of nonpayment of premium, to use the net value of the policy, rather than the cash surrender value, to purchase paid-up or extended insurance; and that the provisions of such statute prohibited a surrender charge on a lapsed policy. In Security Life Ins. Co. v. Watkins, 189 Ky. 20, 224 S.W. 462, the court held that the statute in effect at the time the policy was executed forbade an insurance company making a surrender charge in case of a lapsed policy, and quoted from the Peak case that such a charge was in violation of statute. In the Watkins case, there was an additional question presented. The policy stipulated that, upon nonpayment of premiums, it would be automatically continued in force as term insurance, provided that the amount of the policy should be reduced in the ratio of any then existing indebtedness against the policy to its then cash value. The court held that the result would be that, in making any loans to a policy holder, the company would charge its regulation interest rate, and at the same time provide an additional penalty by reducing the amount of the policy in the ratio of the policy holder's indebtedness to the cash value of the policy. Such a provision, it was held, was void as against public policy. While the court, in considering both the surrender charge, and the provisions with regard to reduction of the amount of the policy in the ratio of indebtedness to cash value, stated that both were "inimical to our law and contrary to our public policy," we draw therefrom the conclusion that the basis of holding the surrender charge void and against public policy, was because it was prohibited by statute.

In the foregoing cases, deduction of a surrender charge by an insurance company on lapse of a policy, because of nonpayment of premium, was either prohibited by the statutes then in effect, or was contrary to the terms of the policy, itself; and adjudication was explicitly based on such reasons.

On the other hand, it is contended by appellant that the courts of Kentucky have directly passed upon, and sustained, the validity of a surrender charge in Kentucky Home Life Ins. Co. v. Leisman, 268 Ky. 825, 105 S.W.2d 1046, and Merion v. Kentucky Home Mutual Life Ins. Co., 283

Ky. 249, 140 S.W.2d 1067. In the Leisman case [268 Ky. 825, 105 S.W.2d 1047], the question of whether a surrender charge was lawful, does not appear to have been raised, the court merely stating that "the cash surrender value, or the reserve for the purchase of extended or paid-up insurance, is ascertained by taking the mathematical reserve and deducting therefrom a surrender charge of not exceeding 2½ per cent. of the face of the policy. Kentucky Statutes, § 659." In the Merion case, the court went no further than to remark that the statute then in effect provided for a surrender charge; and, apparently, its validity was not questioned.

It is claimed that, in no case, have the Kentucky courts ever sustained a surrender charge on continued or extended insurance, on lapse of the original policy for nonpayment of premiums; and that on every occasion on which the question has been squarely presented for decision, such charges have been held to be invalid. But in all of the cases where surrender charges have been held void, it has been upon the ground that they were prohibited by the statutes then in effect, or, where no statutory provisions were applicable, that such charges were in violation of the terms of the policy in controversy. In no cases have the Kentucky courts held that a surrender charge, as such, is void; and none of the adjudications justify this court in striking down a statute of the State of Kentucky, authorizing a surrender charge, on the ground that such a charge is, in itself, void as an unreasonable penalty, and against public policy.

The surrender charge in this case, being authorized by state statute, and stipulated as a provision of the contract of insurance, must be held to be valid. According to the proofs, the deduction of such a surrender charge on lapse of the policy in this case, would result in a cash value of the policy that would be insufficient to maintain in effect a policy of extended insurance as of the date of death of the insured. At that time, no policy of insurance being in force, appellee is not entitled to recover. Discussion of other points raised is unnecessary to our determination.

The judgment of the District Court is reversed.