## Peak, et al. v. Mutual Benefit Life Insurance Company.

(Decided November 17, 1916.)

### Appeal from Fayette Circuit Court.

1. Insurance—Extended Insurance.—Under the provisions of section 659,. Kentucky Statutes, it is the net value of the policy at the time it is lapsed for non-payment of premium, and not the cash surrender value, which should be applied to the purchase of paid-up or extended insurance.

2. Insurance—Paid-up or Extended Insurance.—Under that statute the whole of the net value of the policy must be applied to the purchase of either paid-up or extended insurance, and the company has no right even if it contracts to do so, to deduct from the net value any surrender charge whatever.

3. Insurance—Reserve on Policies—Sections 653 and 659 Kentucky Statutes.—The provisions of sections 659 and 653 of the Kentucky Statutes prescribing a four per cent. basis upon which to calculate the reserve on life insurance policies when they are lapsed for non-payment of premiums, were not intended in any event or in any case to be so construed as to enable the company to thereby evade the provision of the statute against making surrender charges; it was only intended to prescribe a method of fixing a minimum reserve on life insurance policies when they were writ-

ten upon a basis of four per cent, and was not intended to fix an arbitrary rule where the policy was based upon a lower rate which necessitated the payment by the policyholder of higher premiums, which thereby accumulated for his benefit a larger reserve.

GEORGE R. HUNT, MILLER & MILLER and JAMES A. WILMORE for appellant.

RICHARD C. STOLL and RICHARDS & HARRIS for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

On the 12th of April, 1905, the appellee entered into a contract of insurance with Edward C. Martin whereby it insured his life for the sum of $5,000, he to pay twenty annual premiums of $201.90, each, one on that day and one on each 12th of April thereafter, and it was provided that upon the failure to pay any such premium when due the policy should become null and void subject to the non-forfeiture provisions therein.

Martin paid the first premium in cash, and the next two all in cash except the dividends to which he was entitled, which were credited on the premiums; the three succeeding premiums were paid part in cash, part by crediting the dividends and the remainder by borrowing from the company on the policy.

The policy lapsed on April 12th, 1911, for non-payment of the premium then due, his indebtedness on the policy at the time being $718.95 after crediting all dividends.

The net reserve on the policy at the date it lapsed was $798.00.

On the 23rd of March, 1912, Martin died, and this is an action by George W. Peak, his executor and sole legatee, to recover on the policy.

The petition, after setting out in detail each payment of premium and how the same was paid, further avers that on April 12th, 1911, when the policy lapsed, the net value thereof was $798.00, and that at the time the total indebtedness of Martin to the defendant was $718.95, and that therefore there remained the sum of $79.05 as the net amount available to purchase extended insurance, which, according to the defendant's table, extended said policy for the period of 513 days from April 12th, 1911, and that therefore said insurance was extended up to the 6th day of September, 1912, and long beyond the 23rd of March, the time of Martin's death.

It is alleged in the petition that under the non-forfeiture provisions of the policy after two full year's premiums had been paid, when the same lapsed for non-payment of premium on the 12th of April, 1911, Martin had the right, (1) to surrender said policy to the defendant for the cash surrender value, or (2) to surrender said policy for a non-participating paid-up policy, or (3) if neither of the first two named options were exercised by him, that the insurance would be automatically extended from the date of default and without participation in any surplus, for the full amount of the policy and existing dividend additions, if any, without any action by the owner of the policy; and it is further alleged that Martin did not surrender the policy for its cash surrender value, and that he did not surrender same for a paid-up, non-participating policy, and that therefore under the terms of the non-forfeiture provisions the insurance under said policy was automatically extended.

Annexed to the petition were certain interrogatories propounded to the defendant, which were subsequently answered, and they substantiate the allegations of the petition.

The defendant answered in two paragraphs; in the first it denied that the net reserve or the net value of the Martin policy was $798 on April 12th, 1911, or at that time there remained, after the payment of Martin's indebtedness, the sum of $79.05 as the net amount available for the purchase of extended insurance under the contract, or that there was any amount in excess of $29.05 available for such purpose; it further denied that the policy was thereby extended beyond the death of Martin on the 23rd of March, 1912, or that it was extended to any period beyond the 18th day of October, 1911.

In the second paragraph the defendant sets out at length the non-forfeiture provisions of the policy and a table based thereon showing the cash surrender value at the various periods and the length of time of automatically extended insurance upon forfeiture for non-payment of premiums under the terms of the policy. These non-forfeiture provisions are in no essential respects different from what is alleged in the petition except that they do provide that in ascertaining the cash surrender value the same shall be equal to the entire net

reserve of the policy estimated by the American Experience Mortality at three per cent. yearly, less one per cent. of the amount insured by the policy; in other words, under the terms of the non-forfeiture provisions the company in the instant case had the right in estimating the cash surrender value of the policy to take from the entire net reserve one per cent. of the amount insured, or $50.00, as a surrender charge, leaving the balance of the net reserve or net value as the cash surrender value. The non-forfeiture provisions further provide that the amount of the paid-up policy or the term of the extended insurance will be such as the amount of the cash surrender value of the policy, less any indebtedness, will purchase at single premium rates according to the attained age of the insured at three per cent. yearly.

In other words, that while the net reserve or net value of the policy at the time it lapsed was $798, the company had the right under the terms of its policy in finding the cash surrender value thereof to deduct $50.00 from the net reserve, thereby fixing the cash surrender value at $748; and that instead of deducting the indebtedness of Martin of $718.95 from the net value of the policy at the time it lapsed and thereby ascertaining the amount available to purchase extended insurance, the indebtedness should be deducted from the cash surrender value of $748 thus ascertained under the terms of the policy.

It will be seen therefore that the plaintiff's claim is that there was $79.05 available to purchase extended insurance at the time the policy lapsed, and that the defendant's claim is that there was only $29.05 with which to purchase such insurance. The $79.05 would have carried the policy beyond the death of Martin, and the $29.05 would only have carried it to the 18th of October, 1911, some five months before his death.

A demurrer was filed to the second paragraph of the defendant's answer, which was overruled by the court, and the plaintiff declining to plead further the case was submitted upon the pleadings and proof and the court dismissed the plaintiff's petition, and from that judgment the plaintiff has appealed.

Section 659 of the Kentucky Statutes, provides:

"Subdivision 2: No policy of life or endowment insurance upon the ordinary plan hereafter issued by any

domestic life insurance company shall become forfeit or void, for non-payment of premiums, after three full years' premiums, in cash, have been paid thereon, but, in case of default in the payment of any premium there-after, then, without any further stipulation or act, except as herein provided, such policy shall be binding upon the company for the amount of paid-up insurance, which, according to the company's published tables of single premiums, the net value of the policy on such anniversary, and all dividend additions thereon, computed by the rule of section 116 of the Act, to which this is amendatory, and which section is section 653, Kentucky Statutes, will purchase as a net single premium for life or endowment insurance maturing and terminating at the time and in the manner provided in the original policy; and such default shall not change or affect the condition or terms of the policy, except as regards the payment of premium and the amount payable thereon; Provided, however, that any company may contract with its policyholders to furnish, in lieu of the paid-up insurance provided for in this section, any other form of life insurance lawful in this commonwealth, of not less value.

"The reserve for such paid-up insurance shall not be less than two-thirds of the reserve of the original policy; but any outstanding indebtedness on account of said policy shall operate to reduce the said paid-up insurance, in proportion to its ratio to the reserve of such paid-up insurance, computed by the rule of section 116 of the act, to which this is amendatory, and which section is 653, Kentucky Statutes.

"Every such policy after the payment of three full years' premiums thereon, in cash, shall have a surrender value, which shall not be less than seventy per cent. of the reserve that would be required for the aforesaid paid-up insurance, after deducting for any indebtedness as above provided, computed by the rule of section 116 of the act, to which this is amendatory and which section is section 653, Kentucky Statutes.

"Subdivision 4:  Any condition or stipulation in the policy of insurance, or elsewhere, contrary to the provisions of this section, and any waiver of such provisions by the assured, shall be void."

And Section 653, provides:

"When the actual funds of any life insurance company doing business in this Commonwealth are not of a

net cash value equal to its liabilities, counting as such the net value of its policies, which shall be until the thirty-first day of December, 1895, valued according to the 'American Experience' table rate of mortality, with interest at four and one-half per centum per annum, and on and after that day shall be valued according to the 'combined experience' or 'actuaries' table rate of mortality, with interest at four per centum per annum, it shall be the duty of the Insurance Commissioner to give notice to such company and its agents to discontinue issuing new policies within this Commonwealth until such time as its funds may become equal to its liabilities, valuing its policies as aforesaid. Any officer or agent who, after such notice has been given, issues a new policy from and on behalf of such company, before its funds have become equal to its liabilities, as aforesaid, shall forfeit for each offense not exceeding one thousand dollars."

It is not the contention of the company, as we understand from the brief and the oral argument, that it had a right under the statute to deduct the cash surrender charge of $50.00; but it is its contention, which was the view of the lower court, that as the statute prescribes how the amount to be applied to paid-up insurance, or such other insurance as might be contracted for of not less value, shall be ascertained, and as the contract of insurance provides a method of reaching that amount more favorable to the insured than the statute, it had the right under the statute to contract for the method which it has adopted. That is to say, that because the contract is more favorable to the insured when the calculation is made under its terms than it would be if made under the statute, the contract is enforceable; that the insured must either rely upon the contract or the statute, and that in either event the amount available for extended insurance would not have kept the policy alive until the death of Martin.

But appellant insists that he is entitled to a settlement under the terms of his contract read and construed in the light of the statute, and that if the surrender charge, which is not authorized by the statute, be eliminated enough would be left, as above indicated, to carry the extended insurance beyond the date of Martin's death.

The record shows that the insurance in question was issued upon what is known as the three per cent. basis—that is, that the premiums paid from time to time by the insured, compounded at three per cent., would upon the maturity of the policy and similar policies of the same class produce a fund sufficient to discharge it and such other policies. The lower the rate of interest upon which a policy is based—that is, the smaller income which the company estimates it will receive upon the premium paid—the greater will be the premium required to be paid by the insured; if the insurance is issued upon the basis of three per cent. the premiums will necessarily be greater than if it is issued upon the basis of four per cent., because it requires a larger sum of money to produce a given amount at three per cent. than it does at four per cent., and it necessarily follows that premiums on a three per cent. policy are higher than they would be for the same amount of insurance for the same person if the insurance was issued upon a four per cent. basis.

The policy in question is a three per cent. policy and consequently the insured was required to pay higher premiums than if it had been a four per cent. policy, and notwithstanding he has paid these higher premiums upon the basis of three per cent., and thereby made the net value of his policy greater, it is the contention of the company that he must either submit to the deduction of the surrender charge provided for in the contract, which is not authorized by law, or he must submit under the statute to have the calculation under the flat four per cent. basis fixed therein.

This contention brings us squarely to the question whether the statute intended to fix an arbitrary method of ascertaining the net reserve on all policies without regard to the basis upon which they were issued or the amount of premiums paid thereon, or was it the purpose of the statute to prescribe a method of ascertaining the minimum reserve or net value of a policy when it was written upon a basis of four per cent.?

The primary purpose of the statute was to require insurance companies to do business upon a safe and sound basis so that their policyholders would be duly protected, and with this purpose in view it was provided in section 653 that whenever the actual funds of any life insurance company are not of a net cash value equal

to its liabilities when estimated at four per cent. it should be the duty of the insurance commissioner to direct it to discontinue issuing new policies. The effect of this was in substance to say to the insurance companies that they must not do business upon a higher rate than four per cent., as in the opinion of the law-makers that was the minimum basis which was safe and conservative.

At the time of the passage of that Act no life insurance companies in this State were doing business upon a less basis than four or four and one-half per cent., and it was intended by the Act merely to prescribe that as the basis of ascertaining the minimum reserve, and was not in contemplation of the law-makers that it might be so construed in any state of case so as to authorize the companies to use that basis as a pretext to enable them to evade the provision prohibiting a surrender charge on lapsed policies.

It would be impugning the integrity as well as the intelligence of the law-makers to so construe these statutes as to make them mean that although the policyholder may be required under a policy issued upon one basis to pay higher premiums than he would have been required to pay if issued upon the basis fixed in the statute, and thereby make the net reserve of his policy when it lapsed much more because of the excessive premiums paid by him than it would have been if he had paid upon the basis fixed by the statute, he must settle on the arbitrary basis prescribed by the statute and shall not be entitled to settle under the terms of his contract with the company unless he submit to a surrender charge, which is prohibited by law. To so construe it would be to offer to the insurance companies an easy method of evading the provision against surrender charges and enable them, in effect, to nullify the statute in that respect.

We think a fair and reasonable interpretation of the statute is that it was intended to prescribe a method of fixing the minimum reserve on all life insurance policies when they were written on a basis of four per cent.; but that it was not its purpose to fix that as an arbitrary rule where the insurance was based upon a lower rate which necessitated the payment by the policyholder of higher premiums and thereby accumulated for his benefit a larger reserve.

The provision in the policy for a surrender charge in the case of either paid-up or extended insurance was contrary to the statute, and therefore void; the appellant was entitled to a settlement under the terms of his policy with this void provision eliminated. Penn Mutual Life Ins. Co. v. Barnett's Admr., 124 Ky. 266. It is the *net value* which the statute says shall be used in purchasing paid up or extended insurance, and not the cash surrender value.

The judgment is reversed with directions to sustain the demurrer to the second paragraph of the answer, and to enter a judgment for the plaintiff.