## Prudential Insurance Company of America v. Ragan, Administrator, etc.

(Decided May 23, 1919.)

## Appeal from Henderson Circuit Court.

1. Insurance—Reserve—Paid Up Insurance.—Under section 659, Ky. Stats., the entire reserve, or net value of a policy, shall be used in the purchase of paid up or extended insurance.

2. Insurance—Construction of Policy.—Where a policy of insurance contains terms more advantageous to the insured than are required by statute the provisions of the statute will be treated as a minimum of value; the policy and statute will be considered together and that construction given which is most favorable to the insured and such as will sustain the contract.

3. Insurance—Lapse of Policy for Non-Payment of Premium.—Where a policy lapsed for non-payment of the premium and where, after deducting from the reserve and accrued dividend the indebted-

ness on the policy, there is a balance remaining more than sufficient to pay the gross premium for new, original term insurance for the face of the policy, less the indebtedness at insured's attained age, and for the period between the lapse and death, a recovery under the policy will be upheld.

4. Insurance—Construction of Policy.—Statutes already existing relating to insurance in force at the time the policy is issued must be regarded as entering into and forming a part of the policy to the same effect as if embodied therein.

5. Insurance—Construction of Policy.—Different provisions of a contract of insurance must be so construed, if it can be reasonably done, as to give effect to each, and where two interpretations equally fair may be made that which allows a greater indemnity will prevail.

6. Insurance—Construction of Policy.—Where under the terms of a policy its meaning is doubtful a construction will be given which is favorable to the insured.

7. Insurance—Construction of Policy.—Where the policy contains inconsistent or contradictory provisions effect will be given to those which sustain rather than those which will forfeit the contract.

W. MARSHALL BULLITT, BRUCE & BULLITT, RODMAN GRUBBS and DORSEY & DORSEY for appellant.

VANCE & HEILBRONNER for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

By its policy, dated July 12, 1912, appellant insured the life of Robert W. Nichols for $15,000.00. The policy lapsed for the non-payment of the premium due July 12, 1916. Under the policy, insured was given the option upon lapse, (1) of taking the cash surrender value specified therein, less any indebtedness, or (2) a paid up policy for the amount stated in the policy, but this amount to be reduced by the proportion that the total indebtedness, if any, bears to the cash surrender value, or (3) if neither of the above were accepted the company, without any action on the part of the insured, would write a nonparticipating paid up term policy for the full amount insured, less any indebtedness, for such a term as the cash surrender value, after deducting the indebtedness, would carry the modified amount at single premium term rates at 3½%. Insured did not accept either of the first two options.

At the time the policy lapsed there was an indebtenness on it of $1,185.00, this being the cash surrender value of the policy.

The indebtedness, equalizing as it does, the cash surrender value, we have as the attendant result, under the terms thereof, a valueless policy.

After its mutualization in 1915, the company declared a special dividend of $24.90 on this policy; $24.90 would carry a policy of $13,815.00 (being $15,000.00, less the indebtedness of $1,185.00) for 39 days, or to August 20, 1916. Insured died March 24, 1917, 255 days after the lapse.

Contending there was no insurance in force at the time of the insured's death, the company declined payment under the policy. George W. Ragan, as administrator of decedent's estate, brought suit on the policy and recovered judgment in the court below for $13,815.00, with interest from August 6, 1917.

Section 659 of the Kentucky Statutes provides, in part, as follows:

"No policy of life or endowment insurance upon the ordinary plan hereafter issued by any domestic life insurance company shall became forfeit or void, for nonpayment of premiums, after three full years' premiums, in cash, have been paid thereon, but, in case of default in the payment of any premium thereafter, then without any further stipulation or act, except as herein provided, such policy shall be binding upon the company for the amount of paid up insurance, which according to the company's published tables of single premiums, the net value of the policy on such anniversary, and all dividend additions thereon, computed by the rule of section 116 of the act, to which this is amendatory, and which section is section 653 Kentucky Statutes, will purchase as a net single premium for life or endowment insurance maturing or terminating at the time and in the manner provided in the original policy; and such default shall not change or affect the condition or terms of the policy, except as regards the payment of premium and the amount payable thereon; provided, however, that any company may contract with its policyholders to furnish, in lieu of the paid up insurance provided for in this section, any other form of life insurance lawful in this Commonwealth, of not less value.

"The reserve for such paid up insurance shall not be less than two-thirds of the reserve of the original policy; but, any outstanding indebtedness on account of said policy shall operate to reduce the said paid up insur-

ance in proportion to its ratio to the reserve of such paid up insurance, computed by the rule of section 116 of the act, to which this is amendatory, and which section is section 653, Kentucky Statutes.

"Every such policy after the payment of three full years' premiums thereon, in cash, shall have a surrender value, which shall not be less than seventy per cent of the reserve that would be required for the aforesaid paid up insurance, after deducting for any indebtedness as above provided, computed by the rule of section 116 of the act, to which this is amendatory, and which section is section 653, Kentucky Statutes."

The rule referred to is the actuaries' table of mortality and 4% interest. The calculation of the reserve in the policy was based on the American experience table and 3½% interest.

Calculating the reserve in accordance with the actuaries' table of mortality and 4%, as provided in the statute, we would have $1,321.95, plus the dividend of $24.90—$1,346.85, less the indebtedness of $1,185.00, or $161.85.

The company has no published tables of single premiums for extended insurance, but according to the company's published rates for term insurance the single premium at age 54 (insured's attained age at the time of lapse), for $13,815.00, insurance for 255 days would be $233.89. Hence the net sum arrived at as above would not be sufficient to pay the premium for the 255 days.

Applying the provisions of the statute as to the reduction of the paid up insurance by reason of the indebtedness we have the above sum of $1,346.85, which will purchase in a single premium paid up insurance of $2,067.00; the reserve on this at 4% is $1,090.49 and more than two-thirds of the reserve of the original policy. Reducing said $2,667.00 in proportion to the ratio of the indebtedness to the reserve of such paid up insurance, to-wit, the ratio of $1,185.00 to $1,090.49, we find the indebtedness exceeds the reserve—in actuarial parlance, it is greater than unity, thus reducing the paid up insurance to less than nothing.

And so, if we make the calculation by the American Experience Table, with 3½% interest, we have a reserve of $1,397.85, dividend $24.90, total $1,422.75, which will purchase paid up insurance of $2,183.00. The reserve

on this is $1,210.04; reducing $2,183.00 in the proportion as $1,185.00 is to $1,210.04 we get $45.00 as available paid up insurance, the reserve of which is $24.94, and this would purchase an equivalent value in extended insurance for 39 days.

It might be well to note the difference between net premiums and published or full premiums. The premium paid by the insured is made up of the net premium and the "loading." The net premium is the mathematical amount necessary to enable the company to carry the insurance represented by the policy, exclusive of expenses, taxes, etc. It is calculated on two assumptions: (1) that the policyholder will die as shown by some mortality table, and (2) that the company will earn a certain assumed per cent on its invested funds.

Calculations in accordance with the actuaries' table of mortality with 4% interest simply means that the predictions of this table of mortality have been assumed as facts and that the company will earn a similar percentage on its investment is likewise assumed.

The "loading" is intended to cover expenses, taxes, unforeseen contingencies, etc., for which the net premium makes no provision. The net premium plus the loading makes the full or gross premium—the premium as we know it.

Peak v. Mutual Benefit Life Ins. Co., 172 Ky. 245, involved questions kindred to those here. There the company insisted it had the right to deduct from the reserve a surrender charge of 1% of the policy, or $50.00, and had it been permitted so to do the amount available to purchase extended insurance, after deducting the indebtedness, would not have been sufficient to cover the period between the date the policy lapsed and insured's death.

In that case, as in this, the insurer argued that the insured must either rely upon the contract or the statute, and in either event the amount available for extended insurance could not have kept the policy alive until the insured's death.

Recovery was allowed in that case, and we are now asked to overrule that opinion. The main defense of the Mutual Benefit was, that even admitting it was not proper under the statute, to allow a surrender charge, the statute directed that the reserve should be calculated on the actuaries' 4% basis, and if this was done there would not be an amount sufficient to extend the policy

so as to cover the date of death. It was only by basing the reserve on the American table, with 3%, as provided in the policy, and disallowing the surrender charge, that the right of recovery was sustained

On this point the court says:

"We think a fair and reasonable interpretation of the statute is that it was intended to prescribe a method of fixing the minimum reserve on all life insurance policies when they were written on a basis of four per cent, but that it was not its purpose to fix that as an arbitrary rule where the insurance was based upon a lower rate which necessitated the payment by the policyholder of higher premiums and thereby accumulated for his benefit a larger reserve.

"The provision in the policy for a surrender charge in the case of either paid up or extended insurance was contrary to the statute, and therefore void; the appellant was entitled to a settlement under the terms of his policy with this void provision eliminated. Penn Mutual Life Ins. Co. v. Barnett's Admr., 124 Ky. 266. It is *net value* which the statute says shall be used in purchasing paid up or extended insurance, and not the cash surrender value."

Penn Mutual Life Ins. Co. v. Barnett's Admr., *supra,* is relied upon by counsel for appellant, who state in their brief that the court construes sec. 659 as they do, and hence it is correct. The Barnett case does not permit a surrender charge, but requires the whole of the reserve of a defaulted policy to be applied to the purchase of paid up insurance unless the parties agree to a cash surrender in lieu thereof.

It does permit a "loading" of its published premium rates, as will be seen from the following:

"By treating it as so much cash, and applying it upon the company's published rate of a 'single net premium for life.' That expression is technical. No one nowadays ever pays a single net premium for life in buying life insurance. At least it may be safely assumed that it is extremely rare, if ever done. . . . It is therefore required that this single premium, as published, must in all events buy such insurance as that its reserve (for all sane and safe life insurance must have a reserve) shall not be less than two-thirds of the original reserve. In other words, the 'single premium' alluded to in the statute, must not consume more than one-third of the default-

ing policyholder's reserve for any other purpose than that of finally redeeming that identical policy."

The court also held that the indebtedness should be credited on the reserve as of the date of the lapse. These are the points discussed. The insured elected to take a paid up policy. Having paid twelve premiums the lower court held that insured should have a paid up non-participating policy of twelve-twentieths of the $5,000.00 policy, or $3,000.00, less the indebtedness, or $1,802.00. This was reduced on appeal to $1,104.50.

In the present case appellant complains of the method fixed by the judgment of the lower court in that it follows section 659 of the Statutes, in using the full reserve instead of the cash surrender value, but follows the policy in the use of net rates and the treatment of indebtedness. It is urged that either the policy or the statutory method is complete in itself, but either should be enforced only as a whole and any combination of the two would work an injustice to the insured or the insurer. The cash surrender value and the indebtedness being the same, there was no insurance in force at the date of the lapse under the strict terms of the policy; likewise if the provisions of the statute were followed in the calculation of the reserve and in the treatment of the indebtedness there would be no recovery.

It is admitted by counsel that the policy in the Peak case, *supra*, contained the same non-forfeiture provisions as does the policy in the case at bar, and the facts of the two cases are entirely similar and they, in effect, concede that unless the Peake case is overruled or modified the judgment of the lower court is correct. We see no reason for overruling the decision in the Peak case, nor in our judgment is it necessary to apply what counsel term net rates to sustain a recovery.

The company's actuary testifies that the gross premium for new, original term insurance, in the sum of $13,815.00 (the face of the policy less the indebtedness), for 225 days at insured's attained age is $233.89. The net premium for the same period of time, age and amount of insurance would be $188.50, according to the actuaries' table and 4%, or $162.24 calculated by the American Experience Table with 3½%.

The Barnett case, *supra*, is the main authority relied upon by appellant, and yet, construing the policy in the

light of that case and giving to the insured the benefit of the gross premium, we get this result:

Full reserve calculated on the American Experience Tables, with 3½% interest... $1,397.85

Plus dividend of ........................................................ 24.90

A total of ......................:...................................... $1,422.75

Less the indebtedness of ......................,................... 1,185.00

Leaves a balance of................................................ $ 237.75, or $3.86 more than sufficient to pay the gross premium.

Not only should the judgment be sustained because it follows the rule established in the Barnett and Peak cases, *supra,* but for the further reason that the statutes of a state, relating to insurance in force at the time a policy is issued, must be regarded .as entering into and forming a part of the policy to the same effect as if embodied therein. Cooley's Briefs on Life Insurance, vol. 6, p. 691; Hall, &c. v. Ayers, Guardian, 32 Rep. 288, 105 S. W. 911.

If, therefore, the provisions of the statute are read into the policy, and we follow the rule familiar in construing insurance policies, to-wit, that the different provisions of a contract of insurance must be so construed, if it can be reasonably done, as to give effect to each, and where two interpretations equally fair may be made, that which allows a greater indemnity will prevail. 14 R. C. L., p. 925.

And where its terms render doubtful the meaning of a policy, a construction must be given which is favorable to the party insured, or where the policy contains inconsistent or contradictory provisions force must be given to those that sustain rather than to those which would forfeit the contract, because forfeitures are not favored by the law. Sun Life Ins. Co. v. Taylor, 108 Ky. 408, 14 R. C. L., p. 925; Inter-Southern Life Ins. Co. v. Duff, 184 Ky. 227.

Aetna Life Ins. Co., et al v. Hardison, Ins. Com'r, 199 Mass. 181, 85 N. E. 407, involved the effect to be given a statute which provided that a policy and the application therefor should constitute the entire contract between the parties.

The policy in question did not include a reference to the application in the matter of warranties and the court

held the insurance commissioner was correct in suggesting that the words "and the application is attached hereto," be added to meet the requirement of the statute, the court saying:

"Inasmuch as the ten provisions referred to and the other prescribed parts of the policy were intended for the protection of the policyholder, we are of the opinion that if they are contained in substance in the policy, their form may be varied, and additional provisions beneficial to the insured may be inserted, provided the requirements of the statute are satisfied, and are left undiminished by that which is added. . . .

"It is conceivable that the application might contain something helpful to the insured as a part of the contract, in connection with other provisions, and with questions that might arise."

This case was approved in the later case of New York Life Ins. Co. v. Hardison, 199 Mass. 190, 85 N. E. 410, 127 Am. St. Rep. 478, wherein it is said that no departure from the exact provisions required by the statute should be permitted unless the substitution is in every way as advantageous to the insured and as desirable as the prescribed provision.

Where a policy of insurance contains terms more advantageous to the insured than is required by statute the provisions of the statute will be treated as a minimum of value; the policy and statute will be considered together and that construction given which is more favorable to the insured and such as will sustain the contract.

Finding no error in the judgment appealed from same is accordingly affirmed.