## Commonwealth Life Insurance Co. v. Haskins.

(Decided Jan. 22, 1935.)

(As Modified on Denial of Rehearing June 18, 1935.)

E. B. ANDERSON for appellant.

LOUIS I. IGLEHEART and CLAUDE E. SMITH for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On the 21st day of February, 1920, the appellant insured the life of Yewell Haskins in the sum of $5,000, naming as beneficiary therein his wife, Minnie M. Haskins, appellee herein.

Mr. Haskins paid the premiums on the policy up to and including the premium due February 21, 1932, which kept the policy in force to February 21, 1933, plus 30 days of grace.

On the 20th day of May, 1931, Mr. Haskins borrowed from appellant on the policy, the then full loan or cash value, $1,120, and executed and delivered to appellant his note therefor. Mr. Haskins died on the 3d day of April, 1933, without having paid any part of the note and without having paid the premium on the policy

due February 21, 1933. His death occurred 41 days after the due date of the premium which became due Feb. 21, 1933, and 11 days after the expiration of the days of grace.

The appellee demanded payment of the face value of the policy and appellant refused payment on the ground that the policy had lapsed for nonpayment of the premiums as above indicated, but admitted that at the time of Mr. Haskins' death the cash surrender or loan value of the policy was $1,230 or a balance of $110 over and above the $1,120 note, and it tendered and offered to pay appellee the $110, and pleaded, in substance, that under the terms of the policy it is provided that "if there is a loan on the policy then the cash surrender value will be applied to the payment of the loan and the balance, if any, will be paid to the insured," and by the terms of the loan agreement the insured agreed as follows:

"Said loan is made under and on the terms, conditions and provisions contained in said policy, and in the event said loan is paid by the application by the Company thereto of any Cash Surrender Value in the manner set forth in said policy, any excess of Cash Surrender Value remaining after said application, shall be paid to the insured in cash within thirty days after the grace period allowed on the premium has expired, said thirty days being stipulated between the parties as a reasonable opportunity offered the insured to apply for the reinstatement of his lapsed policy in accordance with the provisions thereof; and the insured hereby elects to accept any such payment in lieu of any paid up extended insurance."

These provisions of the policy and loan agreement are not denied by appellee, but in avoidance of same, she pleaded, in substance, that that portion of the policy and loan agreement which purports to require the insured to accept cash surrender value upon default of payment of premiums are contrary to and prohibited by section 659, Kentucky Statutes (1922 Edition), which was in effect at the time the policy was issued, and under the Statutes, supra, the $110 surplus over and above the loan should have been applied to extended insurance.

By various pleadings as above indicated, the issues were made and the court entered judgment in favor of appellee, plaintiff below, for the full value of the policy, and from that judgment appellant brings this appeal.

The sole question to be determined is whether or not the appellant and the insured could contract as they saw proper with respect to the cash surrender or loan value of the policy, and thereby make the policy become forfeit or void for nonpayment of premiums after three full years premiums had been paid thereon, or, whether that sum should have been applied to paid-up insurance as provided by the Statutes, supra, and certain parts of the policy. The Statutes (section 659), so far as is pertinent, reads:

"No policy of life or endowment insurance upon the ordinary plan hereafter issued by any domestic life insurance company shall become forfeit or void, for nonpayment of premiums, after three full years' premiums, in cash, have been paid thereon; but, in case of default in the payment of any premium thereafter, then, without any further stipulation or act, except, as herein provided, such policy shall be binding upon the company for the amount of paid-up insurance, which, according to the company's published tables of single premiums, the net value of the policy on such anniversary, and all dividend additions thereon, computed by the rule of section 116 of the act, to which this is amendatory, and which is section 653, Kentucky statutes, will purchase as a net single premium for life or endowment insurance maturing and terminating at the time and in the manner provided in the original policy: * * * Provided, however, That any company may contract with its policy-holders to furnish, in lieu of the paid-up insurance provided for in this section, any other form of life insurance lawful in this commonwealth, of not less value. * * *

"Any condition or stipulation in the policy of insurance, or elsewhere, contrary to the provisions of this section, and any waiver of such provisions by the assured, shall be void."

It is insisted for appellant that under the terms of the policy and the loan agreement it had no right or power to apply any part of the $110 to the payment

of premiums or to apply it to extended insurance or otherwise dispose of it except to pay it to the insured, and for the courts to hold otherwise would be to make a contract of insurance for the parties which they did not make for themselves. But it must be remembered that this is not a question of construing ambiguous or uncertain language contained in the contract; the question is whether or not the courts can enforce a contract which is prohibited by law. The Statutes, supra, forbid the forfeiture or cancellation of an insurance policy of the nature and kind under consideration herein, after three premiums have been paid thereon, and plainly provide that the loan or cash surrender value, if any, shall be applied to extended insurance.

In Emig's Adm'r v. Mutual Benefit Life Ins. Co., 127 Ky. 588, 106 S. W. 230, 32 Ky. Law Rep. 484, 23 L. R. A. (N. S.) 828, this court had before it a question very similar to the one in the instant case. That opinion was written before the enactment of section 659 of the Statutes, relied on by appellee, and, in the absence of such statute, it was held that such contracts as relied on by appellant herein were void and unenforceable as being contrary to public policy, in that it was discriminatory between borrowing and nonborrowing policyholders; and such contracts were violative of the usury statutes, in that it was exacting more from the borrowing policyholder than legal interest, because, in addition to the interest paid on the sum borrowed, the policyholder was penalized by the forfeiture of his policy. The opinion in the Emig's Case, supra, is very elaborate and deals extensively and logically with the question involved. Without further reference or elaboration on that opinion it suffices to say that it is conclusive of the case at bar. But since the publication of that opinion, section 659 of the Kentucky Statutes (1922 Edition) has been enacted and referred to and construed in numerous cases disposing of questions similar to the one involved herein.

In Inter-Southern Life Ins. Co. v. Omer, 238 Ky. 790, 38 S. W. (2d) 931, the same question was considered by this court involving the application of the Statutes, supra, to insurance contracts wherein it was held that statutes respecting reserve must be regarded as forming a part of the policy to the same effect as if embodied therein, and under policy giving option of

"paid-up" and "extended" insurance, and providing that, on failure to exercise option, or default of payment of premiums, extended insurance would be granted and no demand was necessary for extended insurance, and the insurance company is held bound by published tables as regards extended insurance.

In Prudential Ins. Co. of America v. Ragan, etc., 184 Ky. 359, 212 S. W. 123, 126, referring to section 659, Ky. Statutes, the court said:

"* * * The statutes of a state, relating to insurance in force at the time a policy is issued, must be regarded as entering into and forming a part of the policy, to the same effect as if embodied therein"—

citing Cooley's Briefs on Insurance, vol. 6, page 691; Hall v. Ayer's Guardian, 105 S. W. 911, 32 Ky. Law Rep. 288.

If, therefore, the provisions of the Statutes are read into the policy and we follow the rule familiar in construing insurance policies, to wit, that the different provisions of a contract of insurance must be so construed, if it can be reasonably done, as to give effect to each, and where two interpretations may be made, that which allows a greater indemnity will prevail. 14 R. C. L. 925.

In Security Life Ins. Co. of America v. Watkins, 189 Ky. 20, 224 S. W. 462, it is held that an insurance company cannot under our Constitution and Statutes enforce a surrender charge provided for in the policy and thereby reduce the reserve so as to defeat the policy. See, also, to the same effect, N. Y. Life Ins. Co. v. N. L. Curry & Bro., 115 Ky. 100, 72 S. W. 736, 24 Ky. Law Rep. 1930, 61 L. R. A. 268, 103 Am. St. Rep. 297.

In the case at bar it is not contended by appellant that the reserve or cash surrender or loan value of the policy after payment of the premium in 1932, less the indebtedness, was insufficient to extend the policy beyond the time of the death of the insured if such reserve had been applied to extended insurance. Appellant relies only upon those provisions of the policy and the loan agreement which required the insured to accept in cash the $110 surplus over and above the indebtedness to the company.

Appellant relies upon the case of Commonwealth Life Ins. Co. v. Gault's Adm'rs, 256 Ky. 625, 76 S. W. (2d) 618, 620. But there is a distinction between that case and the present one and our conclusions reached in the present case do not conflict with the Gault Case. In the Gault Case the entire reserve was covered or pledged by the insured's note evidencing his indebtedness to the company and the company was not bound to impair its security by deducting therefrom the amount of the premium. But in the case at bar there was a surplus of $110 left after deducting from the surplus or reserve the full amount of the insured's note and the balance, $110, should be treated as though there had been no indebtedness. In the Gault Case, supra, it is said:

"It is an accepted rule: 'If an insurer is indebted to an insured, and has, or should have, in its hands, sufficient funds belonging to and due him, to pay an assessment or a premium when due, it cannot forfeit its policy or certificate for non-payment; rather, it should appropriate such funds to prevent a forfeiture, no matter from what source such funds were derived'."

The rule above quoted is applicable to the present case. The appellant was indebted to the insured in the amount of $110, which should have been applied to the extended insurance to prevent a forfeiture.

And it is further argued that there had been a renewal of the policy since the act of 1922 became effective and such renewals were in effect a new contract and governed by the 1922 act. But we do not think this position can be maintained. A renewal of a policy after it has been suffered to lapse for nonpayment of premiums waives the conditions of the policy respecting the time of paying premiums (Commonwealth Life Ins. Co. v. Gault's Adm'rs, supra) and therefore reinstates and keeps in force the former contract, and the law applicable at the time of the execution of the contract still applies.

Our conclusion, therefore, is that in so far as the policy and loan agreement attempts to require the insured to accept the cash surrender value of the policy instead of applying it to extended insurance, is void and unenforceable, and the trial court did not err in so holding.

Finding no error prejudicial to appellant, the judgment is affirmed.

The whole court sitting.