## Cheek v. Commonwealth Life Ins. Co.

March 24, 1939.

Kendrick S. Alcorn, Judge.

678

WOODWARD, DAWSON & HOBSON, WILBUR FIELDS, and C. E. RANKIN for appellant.

CHENAULT HUGHELY, I. C. JAMES, and BATSON & CARY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The Commonwealth Life Insurance Company issued a policy for $25,000 on March 24, 1922, on the life of Lynn Hanly Bohon. Shortly thereafter the beneficiary was changed from his wife to the D. T. Bohon

Company, of which he was president. Bohon died February 6, 1935. The beneficiary brought this suit on the policy but went into bankruptcy thereafter and it is being prosecuted by its trustee in bankruptcy. The claim for the proceeds rests upon "extended insurance." The case was tried before a jury, but on defendant's motion was transferred to equity because the issues of law and fact were too complicated for consideration by a jury. Later, the court rendered a judgment for the defendant. The plaintiff appeals.

On January 21, 1933, Bohon borrowed $7,500 on the policy, which, by the terms, became due on the next annual premium date, February 24, 1933. On March 17, 1933, the company wrote Bohon reminding him of the past due premium and that the grace period would expire March 27th. It asked him either to send a check for $1,315.80, covering $865.80 premium and $450 interest on the loan; or, if inconvenient, advised that he could send a check for $328.95 and sign and return three enclosed "premium extension notes" for like amount, drawn at 3, 6 and 9 (nine) months from February 24th, "and this settlement will be accepted in lieu of the full cash settlement and the proper receipt will be sent." Bohon accepted this offer and the company acknowledged receipt of his check and executed notes "in settlement of the current year's premium and interest on the loan" and sent him "proper receipt." The first note due May 24th was paid. The second note due August 24th was not paid. On August 29th the company called attention to the nonpayment and offered to extend the time of payment 30 days if Bohon would sign an enclosed application for reinstatement and if it was approved by the company's medical department. On the 31st Bohon wrote that he had not sent the check because notice had not reached him as he had been away from home. He enclosed his check for the amount. This was seven days after the note became due. Its receipt was promptly acknowledged by the company as a tender of payment, but with the advice that "since your policy has lapsed it will be necessary for you to apply for reinstatement." An application blank was enclosed with directions that Bohon should fill out part of it and have Dr. Van Arsdale fill out the other part. He was advised that if the application was approved by the company's medical department, the policy would be reinstated; "otherwise, this remittance will be re-

turned." The company rejected the application for reinstatement because of his physical condition. Bohon was so advised on September 18, 1933, and his check returned. He was further advised that the cash value of the policy, $7,680, had been applied to the payment of the policy loan of $7,500, and there was enclosed a check for $180 "in full and final settlement of our liability." Later, Bohon conferred with the company's medical examiner and apparently advised the company that he would hold the check pending reconsideration. On November 22nd Bohon was advised that the company's decision was unchanged. He retained the check until February 16, 1934, when it was cashed.

The first question to be determined is when did the extended insurance begin to run; and that is dependent upon when the policy is deemed to have lapsed.

The beneficiary argues that the notes constituted payment in full of the annual premium for the year ending February 24, 1934, so that there was no default until then. The form of the notes is the same as that considered in Commonwealth Life Insurance Company v. Gault's Adm'rs, 256 Ky. 625, 76 S. W. (2d) 618. As, pointed out in that opinion, the form is different from that held in Commonwealth Life Insurance Company v. Leete, 224 Ky. 584, 6 S. W. (2d) 1057, to have constituted payment. Upon the reasoning and authority of the Gault Case, we hold these notes did not constitute payment in satisfaction of the year's premium. In answer to appellant's argument it may be noted that the form of the notes in Yutz v. Commonwealth Life Insurance Company, 264 Ky. 142, 94 S. W. (2d) 326, is not disclosed in the opinion nor in the record, which we have examined. That case was decided adversely to the insurance company upon this point, that the notes constituted payment, solely upon the allegations of the petition.

The beneficiary further argues that the acceptance of one-fourth cash and three notes, each for one-fourth of the annual premium with interest, must be regarded as constituting an agreement to receive the premium in quarterly installments, which the policy provided would be made upon application. The advantage resulting from such a construction is that there would be one month's grace for the payment of the note due August 24, 1933, within which period the insured ten-

dered payment. It is not necessary to decide this question.

The issue as to the time of the lapse is narrowed as to whether it was February 24, 1933, when the annual premium was not paid but extended by the acceptance of the cash and notes, or was August 24, 1933, when the second note matured and was not paid promptly. The company's position that the lapse occurred on the former date rests upon (a) the construction of the statute as it was when the policy was issued, and (b) the economics of the contract, customary practice of computation, and the absence of any provision in the policy requiring or authorizing credit to be given its reserve for less than an annual premium. In Inter-Southern Life Insurance Company v. Omer, 238 Ky. 790, 38 S. W. (2d) 931, a premium note, which was called a "blue note," had been given for a semi-annual premium. It was much more definite and specific than the notes involved in this case. Its effect was but the extension of a period of grace. Sometime after it was due the company accepted payment of interest and a sum on the principal less than one-third of it. We held that under the terms of the "blue note" the policy lapsed on the date the premium should have been paid, but the partial payment must be taken into consideration in computing the extended insurance and a proportionate period allowed for it. The distinctions in that case and this are: Section 659 of the Statutes, as amended in 1922, provided the basis of the reserve should be the date of default and that was not the basis when this policy was issued; also the Omer policy expressly provided that if the premium should be paid in installments allowance would be made therefor in computing the benefits over and above the number of years indicated in the table of the policy.

(a) The statute as to the effect of non-payment of premium in force when the policy was issued controls the contract and that law must be considered rather than the statute in force when the default occurs. Mutual Benefit Loan Insurance Company v. O'Brien, 144 Ky. 308, 138 S. W. 245; extending opinion, 116 S. W. 750; Prudential Insurance Company of America v. Ragan, 184 Ky. 359, 212 S. W. 123, certiorari denied, 250 U. S. 668, 40 S. Ct. 14, 63 L. Ed. 1198. Section 659 of the Statutes as it existed when this policy was issued was repealed and reenacted in 1922. Acts of the Gen-

eral Assembly of 1922, Chapter 56. That act, which is now the present statute, is clearer and more specific. The provision of the former and controlling statute was that after the third year where there was a default in the payment of any premium, if there were no other form provided for in the policy in lieu of it of not less value, the company should be bound "for the amount of paid-up insurance, which, according to the company's published tables of single premiums, the net value of the policy on such *anniversary,* and all dividend additions thereon, computed by the rule of * * * Section 653, Kentucky Statutes, will purchase," etc. The company contends that this authorizes and requires that the policy be deemed to have lapsed on its previous anniversary, namely, February 24, 1933. It seems to us the reference to the anniversary in the statute is particularly to the prescribed method for determining the question of solvency of the company, and for computing the values of the policy reserve. Mutual Benefit Life Insurance Company v. First National Bank, 115 Ky. 757, 74 S. W. 1066, 25 Ky. Law Rep. 172. But whether it is to be so limited or not, we are not here dealing with the mandatory form of insurance, that is, paid-up insurance, but with a voluntary or contractual form, that is, extended insurance, which was permitted by the statute. In Aetna Life Insurance Company v. Hartley, 67 S. W. 19, 68 S. W. 1081, 24 Ky. Law Rep. 57, involving a policy issued under the former statute, the same conclusion was reached as in the Omer Case. Cf. Cabell v. Mutual Benefit Life Insurance Company, 157 Ky. 752, 163 S. W. 1119.

(b) Nor does the absence of any provision in the policy definitely fixing the date of lapse where an annual premium has been partially paid authorize the company to say that the date of the annual premium payment shall control even though it was paid a premium for six months or more. Though the reserve of the policy is calculated upon annual premiums paid, and, as we understand, by annual steps, the company may not take the insured's money for six months more, as was done here, and then say that he got nothing more for his money than mere term insurance for six months. The half-annual premium so paid was for the higher grade of insurance and purchased all the benefits of the policy. The company cannot hold the insured to all the forfeiture provisions and ignore all of the beneficial

provisions. It cannot keep the desirable and cast the less choice morsels under the table. It did not undertake to do so when it advised Bohon that his policy lapsed on August 24, 1933. The note and the policy both provided that its non-payment would cause the policy to become "null and void as of that date, subject to the non-forfeiture provisions of said policy." We are of opinion that any benefits or rights the insured had became vested then, and that in calculating the reserve regard must be had for the receipt by the company of this one-half of the annual premium. There is nothing in the policy indicating otherwise. Aetna Life Insurance Company v. Hartley, supra. There are other opinions to the same effect.

What were those rights? The policy stipulated that if it should lapse after three years the insured had four options. The first was to accept cash. The second was to accept paid-up insurance as shown in that table, "provided there is no loan on the policy." The third and fourth options are as follows:

"(3rd) If neither of the foregoing Options shall have been applied for as above, and if there is no loan thereon, this policy shall continue automatically as term insurance from the last anniversary of the Policy, for the full amount insured thereby, and for the number of years and months, as shown in Table B.

"(4th) If there is a loan on the Policy, then the Cash Surrender Value will be applied to the payment of the loan, and the balance, if any, will be paid to the Insured."

Since there was a loan on the policy the company deemed the fourth option alone effective or accepted. And since the table showed the cash surrender value at the end of the eleventh year to be $7,680, it deducted the $7,500 debt and mailed the insured the difference of $180.

It is to be observed that the last two options make a distinction between a borrowing and a non-borrowing policyholder. If the third and fourth options should be construed according to their terms as depriving a borrowing member from the rights extended to the non-borrowing member, then they are illegal because discriminatory. We are of opinion that the insured in this policy was entitled to and must be accorded the same

consideration as a non-borrowing policy holder. Emig's Adm'r v. Mutual Benefit Life Insurance Company, 127 Ky. 588, 106 S. W. 230, 32 Ky. Law Rep. 484, 23 L. R. A., N. S., 828; Security Life Insurance Company v. Watkins, 189 Ky. 20, 224 S. W. 462; Commonwealth Life Insurance Company v. Haskins, 259 Ky. 780, 83 S. W. (2d) 457; Ringstad v. Met. Life Insurance Company, 182 Wash. 550, 47 P. (2d) 1045, 106 A. L. R. 1532. Indeed, the company acknowledges the effect of these decisions to be that it could not force the insured to accept the cash value of the policy. But it submits that Bohon voluntarily elected to do so. The answer to that contention, it seems to us, is two-fold: First, he declined to accept the check for $180 tendered in payment thereof, and for more than five months endeavored to secure a reconsideration of the company's announcement that his policy had lapsed. When all seemed lost, he cashed the check five months after it was tendered him. Secondly, the payment of the $180 was the difference in the cash value and the debt on February 24, 1933, and not on August 24, 1933. On the latter date the insured had paid one-half the annual premium, namely, $432.90, with interest on that part which had been deferred for three months. This had been ignored by the company in ascertaining the cash surrender value. The table published in the policy shows that value on February 24, 1933, to be $7,680, and on February 24, 1934, to be $8,650. Splitting the difference between these two sums as representing the increase in the six months, $485, the cash value on August 24, 1933, was $8,165, so that instead of paying him $180, he was entitled to be paid $665.

As stated in Horn v. Atlas Assurance Society, 241 Ky. 226, 43 S. W. (2d) 675, 678:

"Where one releases a claim in ignorance of the existence of a right, as where by mistake one assumes a debt due him to be smaller than it is, he is not estopped from collecting the balance. * * * It is like the payment made by the company in New York Life Insurance Company v. Van Meter's Adm'r, 137 Ky. 4, 121 S. W. 438, 136 Am. St. Rep. 282, in settlement of a cash value of a life insurance contract of a sum much less than the value fixed by the policy."

The Van Meter Case is particularly applicable to the facts of the one at bar.

This conclusion was affirmed in Inter-Southern Life Insurance Company v. Stephenson, 246 Ky. 694, 56 S. W. (2d) 332; Commonwealth Life Insurance Company v. Haskins, supra; and Yutz v. Commonwealth Life Insurance Company, supra. We are of the opinion, therefore, that the acceptance of the $180 check did not constitute a voluntary election on the part of the insured to exercise the fourth option and take the cash surrender value. His failure to apply for other non-forfeiture benefits was his election to take extended insurance. Nor was it such a settlement as would bar this suit to have the rights of the beneficiary judicially determined.

Two opposing theories are presented by the parties for ascertaining the amount of money belonging to the insured in the hands of the company for the purchase of extended insurance. The company is quite right in its assertion that the terms of an insurance contract must control unless contravening public policy or a statute, and that the courts cannot make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon by them. However, it is a rule of general acceptation, arising from the intricacies of such a contract and the fact that it was prepared by the insurance company, that a policy is construed more strictly against the company; and where there is room for a different interpretation, that most favorable to the insured or beneficiary will be adopted. As stated in Continental Casualty Company v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079, 1082:

> "An insurance policy must be interpreted according to its true character and purpose, and in the sense in which the insured had reason to suppose it was understood."

See, also, Prudential Insurance Company of America v. Harris, 254 Ky. 23, 70 S. W. (2d) 949; Mutual Life Insurance Company v. Smith, 257 Ky. 709, 79 S. W. (2d) 28; 32 C. J. 1151.

It is axiomatic that the law does not favor forfeitures of insurance policies. To that end, as stated upon abundant authority in Commonwealth Life Insurance Company v. Gault's Adm'rs, supra, 76 S. W. (2d) 620:

> "It is an accepted rule: 'If an insurer is indebted

to an insured, and has, or should have, in its hands, sufficient funds belonging to and due him, to pay an assessment or a premium when due, it cannot forfeit its policy or certificate for non-payment; rather, it should appropriate such funds to prevent a forfeiture, no matter from what source such funds were derived.' ''

A similar rule is that, ''An insurer cannot treat the contract as valid for the purpose of collecting the premium and invalid for the purpose of indemnity.'' Inter-Southern Life Insurance Company v. Omer, supra, 38 S. W. (2d) 934.

With this guidance we examine the contract and the evidence to ascertain what sum was available to purchase extended insurance and the proper method of its calculation.

Mr. Smith Homans, the company's actuary who prepared this form of policy and who is acknowledged to be an outstanding insurance expert, testified that the basis of computation, with the resulting amount of reserve shown in the policy table for each year, is much more favorable to the insured than the basis required by Sections 653 and 659 of the Statutes. If computed strictly according to the statute, the surrender value of this policy at the end of the eleventh year, February 24, 1933, would have been $5,029.88, instead of $7,680 as shown by the table. In calculating $7,680 as the cash value, the company had deducted a one percent surrender charge, which is defined as being what it charges for making a cash settlement. It is argued by the beneficiary that this deduction of one percent, that is, $250 surrender charge, is illegal so that the real cash value, which must be used in this reckoning, is $7,930. See Peak v. Mutual Benefit Life Insurance Company, 172 Ky. 245, 189 S. W. 195; Prudential Insurance Company of America v. Ragan, supra; and Security Life Insurance Company v. Watkins, 189 Ky. 20, 224 S. W. 462. The company denies the charge of illegality and justifies its right to make the surrender charge as being authorized by the statute and as not discriminatory and in this case because it still leaves a value far in excess of that required by the statute. Moreover, it contends that there was no deduction from the reserve for extended insurance. It does not seem necessary to pass upon this issue for the case may be determined in favor

of the beneficiary even if we accede to the claims of the company.

But the company denies that it is this cash surrender value that should be considered as the sum available for extended insurance. Its calculation is made in reliance upon the terms of Section 659 of the Statutes before its amendment, which required that on default in the payment of premium the insurer is bound for the amount of paid-up insurance which, according to the company's published tables of single premiums, the net value of the policy on its anniversary will purchase as a net single premium. Upon the assumption that the insured was entitled to credit for what was paid after February 24, 1933, Mr. Homans testified the available paid-up insurance on August 24, 1933, would be $16,395. The policy table shows it was $15,620 on February 24, 1933, and $17,170 one year later. One-half of this increase was used to ascertain the amount on August 24, 1933. Mr. Homans, as we understand, stated that cash surrender values are based on paid-up insurance values but paid-up insurance values are not predicated on cash surrender values. He stated the reserve for paid-up insurance was $8,068.63. Following the statute, which provided that in the event of indebtedness against the policy the amount of paid-up term insurance should be reduced in such proportion as it bears to the reserve value that is, $7,500 to $8,068.63, he testified, would leave the insured's equity in the net value only seven percent, as the ratio is 93 to 100. Since the duration of paid-up insurance was 221½ months, that percentage would give 12½ months, or 465 days, which would fall short by 57 days of covering the date of insured's death.

Mrs. Margaret Roper, an insurance expert introduced by the plaintiff, accepted the cash surrender value as shown in the table on February 24, 1933, and added one-half the increase in the reserve as shown for the following year, thus arriving at the cash value or amount of money in hands of the company on August 24, 1933, as $8,165. Deducting the debt of $7,500, there was $665 net cash value in the policy of $25,000. That is the equivalent of $26.50 per thousand. From "Dawson's Reports" she showed that the annual premium per thousand for term insurance for a man 48 years old (Bohon's age at the time) is $12.08. For $25,000 it would be $302.00, so that $665 would have purchased

extended term insurance for two years and 73 days, which would have carried the liability 271 days beyond the insured's death. It is to be observed that these figures are based upon the reserve after the deduction of the $250 surrender charge. We are told that the rate of $12.08 used in this formula is a "wholesale rate" and does not take care of the expenses of doing business or contingencies or possible variation from the estimates, or profits of the company. Provision for these elements, called "loading," must of necessity be made by increasing the "wholesale rate." Therefore, it is argued the use of $12.08 as a rate is egregiously erroneous. Opposing this is the argument that the "loading" was cared for in the premiums collected, and when the contract became executed, leaving only the payment of the policy if the insured died during the term, the use of the rate without the "loading" is justified.

Mrs. Roper ignored the table in the policy showing the period of extended insurance because of the provisions of the policy that the option to take that form was not available to a borrowing policy-holder. Considering that provision discriminatory and void, as we do, it seems to us that the table must be given consideration and another basis for computation of extended insurance used.

We cannot accept the defendant's hypothesis. It builds upon the terms of Section 659 of the Statutes as it was when the policy was issued. As stated in the early part of the opinion in considering the question of the date of the lapse, the statute then provided that upon default in the payment of premium an insurance company should be bound for "paid-up insurance" which the net value of the policy plus dividend additions would buy. The formula therein prescribed for ascertaining that net value and applying it for the purchase of paid-up insurance where there is a policy loan is that for which the company contends here. The statute, as also stated above, contained the proviso that in lieu of "paid-up insurance" the company could provide "any other form of life insurance lawful in this Commonwealth of not less value." Bohon's policy did provide such "other form." He could have in lieu of paid-up insurance either the cash value or "extended insurance," which is defined in the policy as "term insurance * * * for the full amount insured thereby and for

the number of years and months as shown in Table B.'' In the absence of express choosing of one of these two forms he received ''extended insurance.'' Therefore, it seems to us, that the methods prescribed by Section 659 of the Statutes are not appropriate or applicable. We have got away from the mandatory form and have in hand the contractual form of ''extended insurance.'' In reaching this conclusion we have not overlooked appellant's argument that the term ''paid-up insurance'' means any form of insurance for which no further premiums are to be paid. We do not think the term as here used can be given that generic sense. ''Paid-up insurance'' has a specific meaning of being insurance for a definite sum payable upon the death of the insured person whenever that may occur. This is its generally accepted meaning. It is so regarded and defined in the law books and dictionaries. 14 R. C. L. 990; 37 C. J. 364; Nichols v. Mutual Life Insurance Company, 176 Mo. 355, 75 S. W. 664, 62 L. R. A. 657. The two different forms are recognized and provided for in the current Section 659 of the statutes. But, above all, the distinction between specific ''paid-up insurance'' and ''extended insurance'' is clearly recognized in the policy itself—in the options upon default and in the tables of values, which list ''Cash or Loan Value,'' ''Paid up Insurance,'' and ''Extended Insurance.''

Since we are dealing with the contract of ''extended insurance,'' we must look to it to determine how the period is to be ascertained; or, if it be found that neither the policy nor the statute stipulates a definite rule for learning the amount or extent, to determine it upon an equitable basis. Hines v. Mutual Life Insurance Company, 33 S. W. 202, 18 Ky. Law Rep. 1; Inter-Southern Life Insurance Company v. Omer, supra; Cyc of Insurance Law, section 647.

As shown by its quotation above, the extended insurance option specifies that the period shall be ''the number of years and months as shown in Table B.'' Obviously, that is clear enough where there is no indebtedness. The policy stipulates in relation to the options of choice of the form of insurance after default in payment of premiums that:

> ''Any indebtedness against the policy other than a policy loan will reduce Options (2d) and (3rd) in the proportion such indebtedness bears to the cash surrender value.''

We have here a policy loan. There is no expressly prescribed formula or basis where that is the case. The present statute, Section 659, subdivision 2(a), provides that the values shown in such tables are binding upon both the company and the insured if they equal or exceed the amounts that the insured would be entitled to by the computations required by subdivision 2 (a) of the Statutes. This provision was not in the statute at the time this policy was issued. However, it is but a statutory recognition of what has been generally judicially determined. Cabell v. Mutual Benefit Life Insurance Company, supra; Horton v. Atlantic Life Insurance Company, 187 S. C. 155, 197 S. E. 512, 116 A. L. R. 793. It was held in the latter case that where the policy table showed a cash surrender value of $380 and there was a debt for the same sum on the day of the lapsing of the policy, there was nothing available for extended insurance, even though the plaintiff's contention in respect to the method of calculating the reserve or surrender value might be more advantageous to him. However, in Mutual Benefit Life Insurance Company v. First National Bank, 69 S. W. 1, 24 Ky. Law Rep. 580, we held that the figures shown in the table must yield to language in the policy which could reasonably be construed as otherwise fixing the surrender value as greater than that disclosed in the table, and therefore, more advantageous to the insured. In the case at bar it is shown that the table values have been computed in accordance with the other terms of the policy as to how the reserve shall be calculated and that such value is greater than the law required.

It is shown the periods of extended insurance have been calculated on the company's published rates. The policy tables, therefore, afford a sufficient and proper basis for the computation.

If the cash surrender value has been reduced from the sum explicitly disclosed a policy-holder may reasonably suppose that the published tables may still be accepted as the basis for calculating his extended insurance. We have hereinbefore ascertained that on August 24, 1933, the cash value was $8,165. The table shows that at that time he was entitled to 10 years, 4½ months extended insurance, but the company frankly concedes that this period is erroneous, and that the insured was entitled to 18 years, 5½ months, or 221½ months. We think it is a justifiable conclusion that the cash value

and the value of extended insurance given in such a table are equal. So here the insured could figure that if $8,165 was the equivalent of 18 years, 5½ months, or 6,735 days, of extended insurance, then $1 was the equivalent of such protection for .8248 of a day; or, to reverse the equation, that $1.212 was the equivalent of one day extended insurance. Since, after deducting the policy indebtedness of $7,500 there remained in the company's hands, as we have shown, $665, that sum purchased extended insurance for 549 days. This carried the policy 17 days beyond Bohon's death. That application should have been and now should be made of the money in the hands of the company when the policy lapsed. It should be so adjudged.

The judgment is accordingly reversed.

The whole court sitting.